# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-10588

United States Court of Appeals
Fifth Circuit

**FILED**

July 12, 2016

Lyle W. Cayce
Clerk

CLARENCE D. BROWN,

      Plaintiff - Appellant

v.

ALLISON TAYLOR, In Her Official and Individual Capacity as Executive Director, Office of Violent Sex Offender Management; DIANA LEMON, In Her Official and Individual Capacity as Program Specialist/Case Manager Office of Violent Sex Offender Management; BRIAN COSTELLO, In His Official and Individual Capacity as President, Avalon Correctional Services, Incorporated; GREG BASHAM, In His Official and Individual Capacity as Facility Administrator, Avalon Correctional Services, Incorporated; CARLOS MORALES, In His Official and Individual Capacity as Facility Administrator, Avalon Correctional Services, Incorporated; TARRANT COUNTY; MONTGOMERY COUNTY,

      Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before DAVIS, SMITH, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Clarence Brown appeals the *sua sponte* dismissal of his complaint, with prejudice and without notice and an opportunity to comment. We VACATE and REMAND.

No. 13-10588

## I. Background

Clarence Brown was convicted in Texas state court of one count of aggravated assault on a peace officer and three counts of sexual assault, and was sentenced to fifteen years in prison. Before Brown was released from prison, the state initiated civil commitment proceedings against him under the Texas Sexually Violent Predator Act ("SVPA"), Tex. Health & Safety Code § 841.041.[1] A jury found that he had a behavioral abnormality that made him "likely to engage in a predatory act of sexual violence," and the trial court entered a final judgment ordering Brown civilly committed. *In re Commitment of Brown*, No. 09-10-00589-CV, 2012 WL 4466348, at *1 (Tex. App.—Beaumont Sept. 27, 2012). The order was affirmed on appeal. *Id.*

The SVPA (at all relevant times) provided that an individual determined to be likely to commit future acts of sexual predation should be committed "for outpatient treatment and supervision" to be coordinated by a case manager with the Texas Office of Violent Sex Offender Management ("OVSOM"). Tex. Health & Safety Code § 841.081. Brown was required to comply with the "specific course of treatment provided by the office" and all written requirements of the office or his individual case manager. *Id.* § 841.082(a)(4). Failure to comply with any requirement was at that time punishable as a third-degree felony. *Id.* § 841.085(a)–(b).

Brown alleges that he was initially transferred in 2011 to a facility in El Paso County run by Avalon Correctional Services. Brown claims that his complaints about mistreatment at that facility caused Avalon to transfer him to another facility in Fort Worth in 2012. Upon arrival at this second facility, Brown was told that he had to sign a statement acknowledging his

---

[1] As Brown points out, the SVPA was amended in 2015. Those amendments are not relevant to this case, however, and references in this opinion are to the version in force from 2003 until June 16, 2015, the timeframe encompassing the events in this appeal.

understanding of facility rules. He alleges that he asked for clarification on the rules, but Avalon employees at the facility refused to provide further information, insisting that he sign—per the facility's rules. Brown refused, and was arrested on charges of violating the terms of his civil commitment.

Brown filed suit under 42 U.S.C. § 1983 in federal court on October 1, 2012. He described the above course of confinement and alleged various forms of mistreatment, including, among others, poor conditions and a failure to provide reasonable medical care. He further alleged that he had been improperly denied contact with friends and family, denied access to a law library, and subjected to a variety of other wrongs.

After filing this suit, Brown was found not guilty of violating the terms of his commitment, and transferred from the Tarrant County Jail to the Southeast Texas Transitional Center ("STTC") in Houston, an OVSOM contractor. After this transfer, he supplemented his complaint a number of times, adding claims and new prayers for injunctive relief. The district court reviewed the supplemented complaint and dismissed it, *sua sponte* and with prejudice, on March 14, 2013. Brown was not given notice or an opportunity to respond. He filed a Rule 59(e) motion to alter the judgment, which the district court denied. The district court received Brown's 59(e) motion 29 days after the order of dismissal was entered. Rule 59(e) allows only 28 days to file a motion, however, the district court did not resolve the matter on this basis. Brown timely appealed.

On appeal, this court noted the late filing of the Rule 59(e) motion as a potential jurisdictional problem. *See Brown v. Taylor*, 569 F. App'x 212, 213 (5th Cir. 2014) [hereinafter *Brown I*] (unpublished). This court noted that appellate jurisdiction turned on whether the "prisoner mailbox rule" announced in *Houston v. Lack*, 487 U.S. 266, 270–71 (1988), applied to render Brown's late-filed Rule 59(e) motion timely. If it did, the motion would have

No. 13-10588

been deemed filed on the day that Brown turned it over to STTC authorities, rendering his eventual notice of appeal timely. *Brown I*, 569 F. App'x at 213–14. But the record lacked findings on the extent of Brown's confinement under the civil commitment program. This court therefore remanded the case to the district court "for the limited purpose of making factual findings regarding the extent of Brown's confinement and Brown's ability to file pleadings at the time he filed his Rule 59(e) motion." *Id.* at 214.

On remand, the district court took briefing and evidence from Brown, the Texas Attorney General's office, and STTC. Brown filed objections to STTC's affidavit, acknowledging that there were mailboxes available at the sites that he was authorized to visit, but claiming that he was prohibited by OVSOM regulation from utilizing those mailboxes because he was only allowed to engage in the "business that was [his] sole purpose for going to" a given place. The district court made extensive factual findings responsive to the *Brown I* remand order, whereafter we appointed appellate counsel to represent Brown in appearance in this court. After briefing and oral argument, we conclude that the prisoner mailbox rule applied to Brown, hence we VACATE the district court's *sua sponte* dismissal of Brown's complaint with prejudice and REMAND for further proceedings.

## II. Discussion

### A. The prisoner mailbox rule rendered Brown's 59(e) motion timely

The prisoner mailbox rule announced in *Houston* provides that a *pro se* inmate's notice of appeal is deemed filed on the date that the inmate gives the notice to prison authorities to be sent to the relevant court. 487 U.S. at 270–71. *Houston*'s holding was eventually codified in Rule 4(c) of the Federal Rules of Appellate Procedure, which states that "[i]f an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before

No. 13-10588

the last day for filing." Fed. R. App. P. 4(c)(1). Federal courts, including our court, have extended *Houston*'s rationale to apply to a variety of other filings by *pro se* prisoners.[2]

We held in *Brown I* that the prisoner mailbox rule applies to Rule 59(e) motions,[3] and the law of the case doctrine applies. *See Musacchio v. United States*, 136 S. Ct. 709, 716 (2016) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (quoting *Pepper v. United States*, 562 U.S. 476, 506, (2011))). The record in *Brown I* was insufficiently developed for us to determine whether the prisoner mailbox rule applied to Brown, so we remanded to the district court to make factual findings on the extent of Brown's confinement and his ability to file pleadings at the time he filed his Rule 59(e) motion. *Brown I*, 569 F. App'x at 214. If the mailbox rule applies, Brown's motion, received a single day late, is presumed timely. *See United States v. Young*, 966 F.2d 164, 165 (5th Cir. 1992).

"The prison mailbox rule applies to prisoners who are proceeding pro se. When a litigant is not incarcerated, however, the prison mailbox rule does not apply." *Brown I*, 569 F. App'x at 213 (citation omitted). When Brown filed his Rule 59(e) motion he was civilly committed under the SVPA. While was no longer incarcerated pursuant to a criminal conviction, he was not a free man. Given our holding in *Brown I*, the question is whether Brown was functionally a prisoner for the purpose of the mailbox rule:  based on the district court's factual findings, we conclude that he was.

---

[2] *See Spotville v. Cain*, 149 F.3d 374, 376–77 (5th Cir. 1998) (collecting and discussing cases in which this and other courts have extended the holding in *Houston*).

[3] *See also Sandoval v. Houston*, 131 F.3d 141 (5th Cir. 1997) (unpublished); *Gann v. Johnson*, 116 F.3d 476 (5th Cir. 1997) (unpublished).

## No. 13-10588

While not a prisoner under the Texas Department of Criminal Justice, Brown was civilly committed, requiring him to remain at the STTC twenty-four hours a day, seven days a week. Brown was only allowed to leave STTC with specific, pre-approved, written permission by his case manager or a program specialist. To ensure compliance, Brown was required to submit to GPS tracking. In the three-month period ending with Brown's Rule 59(e) submission, February–April 2013, the district court found that Brown was only permitted to leave STTC on six occasions:  twice to use the law library, and four trips to the hospital.[4]

The district court also found that (1) both the law library and hospital that Brown visited had a U.S. Postal mailbox in the lobby and that (2) STTC maintains an internal mailbox for the use of its residents. Neither of these findings changes our analysis. First, OVSOM "Supervision Requirements" specifically prohibited Brown from engaging in any business at a given location save for the sole business authorized by his case manager. Thus, under OVSOM rules—and a failure to follow the rules "may result in legal action," as Brown's own case demonstrates—he was prohibited from using the mailboxes at the hospital and library, even if he was physically capable of doing so. Second, the internal mail system here is indistinguishable from that in *Houston*. STTC staff collected prisoner mail from the internal mailbox and gave it to the U.S. Postal Carrier. In *Houston*, prisoners gave their notice of appeal to prison authorities to forward to the court, and the Supreme Court held that a prisoner "filed" his notice when "he delivered the notice to prison authorities." 487 U.S. at 270. This is because prisoners could not "take the

---

[4] This fits with Brown's unchallenged assertion that he was on "level II" confinement during the relevant time period. Brown provided the court with an OVSOM "Policy and Procedure" document describing its different levels of supervision. Level Two "clients," according to the policy, "shall be permitted to leave the residence or residential facility to receive medical attention, meet registration requirements, and attend treatment."

steps other litigants can take to monitor the processing of [his] notices of appeal and to ensure that the court clerk receives and stamps [his] notices of appeal before the . . . deadline." *Id.* at 270–71. So too, here. Perhaps most importantly, Brown—like the prisoner in *Houston*—could not "personally travel to the courthouse to see that the notice is stamped 'filed' or to establish the date on which the court received the notice." *Id.* at 271. Rather, Brown, as a pro se civil detainee, had "no choice but to entrust the forwarding of his [Rule 59(e) motion] to [STTC] authorities whom he cannot control or supervise and who may have every incentive to delay." *Id.* Given the level of Brown's confinement and his inability to file his Rule 59(e) motion himself, the prisoner mailbox rule as invoked in *Brown I* applied and his Rule 59(e) motion was timely.

*B. The district court's* sua sponte *dismissal of Brown's complaint was error*

The district court dismissed Brown's complaint *sua sponte*, with prejudice and without notice and an opportunity to respond. When a party like Brown proceeds *in forma pauperis*, the district court has the power on its own motion to dismiss the case for failure to state a claim. 28 U.S.C. § 1915(e)(2)(b)(ii). But this power is cabined by the requirements of basic fairness: a district court may only dismiss a case *sua sponte* after giving the plaintiff notice of the perceived inadequacy of the complaint and an opportunity for the plaintiff to respond. *See, e.g.*, *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014).

This rule against no-notice *sua sponte* dismissal is subject to two exceptions: if the dismissal is without prejudice, or if the plaintiff has alleged his best case. *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998). The dismissal here was *with* prejudice, so the first exception is inapplicable. The "best case" exception stems from *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986) and is, as this court has since clarified, narrow. The key factors in

*Jacquez* were that the plaintiff had (1) "repeatedly declared the adequacy of that complaint in a lengthy response to defendant's motion to dismiss," and (2) "refused to file a supplemental complaint even in the face of a motion to dismiss." *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 643 (5th Cir. 2007). Neither factor was present here. Brown did not receive notice that his complaint might be inadequate, much less an opportunity to amend it or argue against that characterization. Nothing in the record allows us to infer that Brown could not or would not amend his complaint to allege more specific facts had the district court informed him of such a deficiency.

### III. Conclusion

For the foregoing reasons, though we express no opinion on the merits of Brown's complaint, we VACATE the district court's order dismissing Brown's complaint with prejudice and REMAND for further proceedings.