# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-11644

United States Court of Appeals
Fifth Circuit

**FILED**

December 12, 2018

Lyle W. Cayce
Clerk

CLARENCE D. BROWN,

   Plaintiff – Appellant,

v.

ALLISON TAYLOR, In Her Official and Individual Capacity as Executive Director, Office of Violent Sex Offender Management; DIANA LEMON, In Her Official and Individual Capacity as Program Specialist/Case Manager Office of Violent Sex Offender Management; BRIAN COSTELLO, In His Official and Individual Capacity as President, Avalon Correctional Services, Incorporated; GREG BASHAM, In His Official and Individual Capacity as Facility Administrator, Avalon Correctional Services, Incorporated; CARLOS MORALES, In His Official and Individual Capacity as Facility Administrator, Avalon Correctional Services, Incorporated; TARRANT COUNTY; MONTGOMERY COUNTY; DAVID CROOK, In official and individual capacity as agents of the Texas Department of Public Safety; MANUEL SANCHEZ, In official and individual capacity as agents of the Texas Department of Public Safety; JOSH BURSON, In official and individual capacity as agents of the Texas Department of Public Safety,

   Defendants – Appellees.

Appeal from the United States District Court
for the Northern District of Texas

No. 16-11644

Before JOLLY, ELROD, and WILLETT, Circuit Judges.

PER CURIAM:

Clarence Brown filed a *pro se* complaint under 42 U.S.C. § 1983, seeking damages for his mistreatment at various civil commitment facilities and a county jail.  In 2016, we vacated the district court's *sua sponte* dismissal of Brown's complaint and remanded.  Brown now appeals yet another *sua sponte* dismissal, as well as the denial of leave to further amend his complaint.  For the following reasons, we AFFIRM in part, VACATE in part, and REMAND.

I.

A.

Because this case concerns Brown's civil commitment under the Texas Sexually Violent Predator Act (SVPA) between 2011 and 2012, we begin by briefly explaining the SVPA's background.

In 1999, the Texas Legislature created a civil commitment scheme to ensure "the long-term supervision and treatment" of "a small but extremely dangerous group of sexually violent predators" with "a behavioral abnormality . . . that makes [them] likely to engage in repeated predatory acts of sexual violence."  Tex. Health & Safety Code Ann. § 841.001 (West 2017).  The SVPA required civilly committed persons to "reside in a particular location" and undergo "outpatient treatment and supervision" coordinated by the Texas Office of Violent Sex Offender Management (OVSOM).  Sexually Violent Predator Act, 76th Leg., R.S., ch. 1188, § 4.01, secs. 841.081 and 841.082, 1999 Tex. Sess. Law Serv. Ch. 1188 (West) (amended 2003, 2015) (current version at Tex. Health & Safety Code Ann. §§ 841.081, 841.082).  Moreover, those individuals needed to comply with the "specific course of treatment" provided by the office.  *Id.* § 4.01, sec. 841.082(a)(4).  Failure to

No. 16-11644

comply with this requirement was punishable as a third-degree felony.[1] *Id.* § 4.01, sec. 841.085(a).

The Supreme Court of Texas upheld the constitutionality of the original SVPA in *In re Commitment of Fisher*, 164 S.W.3d 637 (Tex. 2005). The court highlighted that the SVPA was less restrictive than other states' schemes as it permitted civilly committed persons "to live at home with their families." *Id.* at 652. Although the court had concerns with the "severe criminal penalties" for violations, it concluded that the SVPA's civil commitment scheme was "rationally connected" to the non-punitive purposes of supervision and treatment of civilly committed persons. *Id.* at 652, 656.

After the *Fisher* decision, the Texas Legislature amended the SVPA to require civilly committed persons "to reside in a Texas residential facility under contract" and to comply with "all written requirements imposed by a case manager." Act of June 17, 2011, 82d Leg., R.S., ch. 1201, § 8 (amended 2015) (current version at Tex. Health & Safety Code Ann. §§ 841.082(a)(1), (a)(4)); *see also Wilson v. Office of Violent Sex Offender Mgmt.*, 584 F. App'x 210, 212 (5th Cir. 2014). The Texas Legislature, however, detected several problems with the operation of the SVPA. First, OVSOM's "[h]orrible mismanagement" of supervision, treatment, and contractors led to a "growing crisis." *See Mitchell v. State*, 473 S.W.3d 503, 508 (Tex. App.—El Paso 2015) (alteration in original) (quoting S. Comm. on Crim. J. Bill Analysis, Tex. S.B. 746, 84th Leg., R.S. (2015)). Second, the possibility of "federal court intervention" to examine the punitive nature of certain conditions of confinement "was not insignificant." *Id.*

---

[1] The original version of the SVPA imposed many additional requirements that could trigger a third-degree felony prosecution. Tex. Health & Safety Code Ann. §§ 841.082(a)(1)–(4), 841.085 (1999).

No. 16-11644

In 2015, "to ensure the continued constitutionality of the Texas civil commitment program," the Texas Legislature overhauled the SVPA. *Id.* The SVPA no longer mandates confinement but simply "requir[es] the person to reside *where instructed by the office.*" Tex. Health & Safety Code Ann. § 841.082(a)(1) (West 2017) (emphasis added). A new agency, Texas Civil Commitment Office, has replaced OVSOM to oversee supervision and treatment of committed persons. Tex. Health & Safety Code Ann. § 841.007 (West 2015). The new SVPA has also "decriminalized the failure to participate in and comply with a civil commitment treatment program." *Vandyke v. State*, 538 S.W.3d 561, 569 (Tex. Ct. Crim. App. 2017); Tex. Health & Safety Code. Ann. § 841.085 (West 2015) (limiting criminal prosecution to violations of four specific subsections of § 841.082). We have not been asked to weigh in on the constitutionality of the new SVPA as Brown does not bring a facial challenge to the new statute.[2] Instead, our inquiry is limited to Brown's specific claims regarding his confinement at two contractor-run facilities and a county jail from 2011 to 2012 under the prior SVPA.

## B.

We recounted the following regarding Brown's civil commitment in the previous appeal:

---

[2] In 2017, the Texas Court of Criminal Appeals upheld the new SVPA against a challenge based on the Texas Constitution, but the court had no occasion to opine on the SVPA's viability under the United States Constitution. *Vandyke*, 538 S.W.3d at 582–83.

Without opining on the correctness of the ruling, we also note that a district court in the Northern District of Texas granted habeas relief to an inmate convicted of violating a commitment condition imposed by the court that ordered his civil commitment. *Russell v. Davis*, 297 F. Supp. 3d 639 (N.D. Tex. 2017). The district court declared unconstitutionally vague a provision of the 2005 version of the SVPA that allows a court to impose additional conditions that it may deem necessary. *Id.* at 644. Because the latest version of the SVPA no longer permits a committing court to impose any additional requirements that it may deem necessary, the *Russell* decision has no bearing on the constitutionality of the current SVPA. *See* Tex. Health & Safety Code Ann. § 841.085 (2015).

4

No. 16-11644

> [In 1998,] Clarence Brown was convicted in Texas state court of one count of aggravated assault on a peace officer and three counts of sexual assault, and was sentenced to fifteen years in prison. Before Brown was released from prison [in October 2011], the state initiated civil commitment proceedings against him under [the SVPA]. A jury found that he had a behavioral abnormality that made him "likely to engage in a predatory act of sexual violence," and the trial court entered a final judgment ordering Brown civilly committed. *In re Commitment of Brown*, No. 09–10–00589–CV, 2012 WL 4466348, at *1 (Tex. App.—Beaumont Sept. 27, 2012). The order was affirmed on appeal. *Id.*

*Brown v. Taylor*, 829 F.3d 365, 367 (5th Cir. 2016).

Brown has alleged the following facts in his first amended complaint.[3] Pursuant to the civil commitment order, OVSOM placed Brown at a facility in El Paso operated by Avalon Correctional Services, Inc. According to Brown, "[t]he El Paso facility [was] surrounded by razor wire" and "equipped with surveillance cameras." Moreover, Brown alleges, the civilly committed residents were housed with prisoners and parolees and subject to "daily random searches" and property restrictions. Brown filed several complaints with Avalon's home office about confiscation of property, "squalid living conditions," "harassment from staff members and prisoners/parolees," and inadequate grievance procedure.

On March 8, 2012, Brown was transferred to a different Avalon facility in Fort Worth, which "operate[d] very similar[ly] to the El Paso facility." During in-processing on the next day, the facility staff informed Brown that he needed to sign certain forms acknowledging and agreeing to the facility's rules. Unsure how the rules applied to civilly committed residents, as compared to prisoners or parolees, Brown sought clarification before signing the forms. A

---

[3] We accept these facts as true and view them in light most favorable to him as we are required to do at this stage. *See Richardson v. Axion Logistics, LLC*, 780 F.3d 304, 304–05 (5th Cir. 2015).

case manager, Clemmy Washington, advised him over the phone to "hold on" as "he would be there shortly to go over the rules." While Brown awaited, Facility Director Greg Basham directed a staff member over the phone to instruct Brown to sign the forms "right then and there." Brown continued to wait and "mentioned filing a lawsuit against Avalon in El Paso concerning the same rules."

When Washington arrived, he explained that Basham "had called [the Avalon home office] and rejected [Brown] from his facility . . . ." The facility staff subsequently informed Brown that he would be arrested for his failure to sign the forms. While Brown was packing, Basham approached him and "began yelling and screaming that he would not tolerate [Brown] causing problems at his facility, like he did in El Paso," "that he had been contacted by people in El Paso that [Brown] would be a problem, and that [Basham] would not tolerate [Brown] contacting [Avalon's home office] under [any] circumstances." Brown was soon arrested, indicted for violating the terms of his commitment, and confined at the Tarrant County Jail as a pre-trial detainee.

After six months in the Tarrant County Jail, on September 13, 2012, Brown posted bond. Instead of releasing Brown to a residential facility, however, Tarrant County Sheriff Dee Anderson transferred him to the Cold Springs Jail. Brown alleges—and the state concedes—that he was not provided sex offender counseling treatment at the Cold Springs Jail until he was acquitted. *See* ROA.100–07, 504; Oral Argument at 30:46–31:13; 37:25–39:33, *Brown v. Taylor* (No. 16-11644).

When Brown was eventually acquitted of violating the terms of the commitment order on October 3, 2012, he was not immediately released from the Cold Springs Jail. Brown alleges that Washington "conveyed to [him] that he would continue to remain in the Cold Spring Jail until [he] learned to quit

filing grievances and lawsuits." During this time, although Brown was permitted to attend sex offender treatment, he was otherwise treated as an inmate. Over a month after acquittal, Brown was finally transferred to a different residential facility in Houston not run by Avalon.[4]

Brown filed a *pro se* complaint under 42 U.S.C. § 1983 against various defendants in their official and individual capacity. "The district court dismissed Brown's complaint *sua sponte*, with prejudice and without notice and opportunity to respond." *Brown*, 829 F.3d at 370. On appeal, we observed that the district court's power to dismiss *pro se* complaints "is cabined by the requirements of basic fairness," vacated the dismissal, and remanded so that Brown could amend his complaint. *Id.*

On remand, the district court instructed Brown to "identif[y] every defendant he is suing by name" and "indicate[] the capacity (individual or official or both) in which he is suing each individual defendant." Brown's first amended complaint identified the following defendants in their individual capacity: Allison Taylor, the former executive director of OVSOM; Brian Costello, Avalon's president; Carlos Morales, El Paso facility manager; Basham; Anderson; and Tarrant County Commissioners' Court.[5]

Just one day after receiving Brown's first amended complaint, the district court *sua sponte* dismissed the claims against the defendants in their official capacity as abandoned. The district court also concluded that Brown abandoned numerous defendants, in individual and official capacity, previously named in the original complaint but not named in the first amended

---

[4] Brown has not brought any claims based on the Houston facility's conditions.

[5] The first amended complaint also alleged various claims against three officers of the Texas Department of Public Safety and Tarrant County District Attorney. Brown does not appeal, and has forfeited, these claims. *See Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011) ("[A]n issue that could have been but was *not* raised on appeal is forfeited and may not be revisited by the district court on remand.").

complaint. Brown attempted to file the second amended complaint, asserting that "[a]lthough [he] made a mistake in the captioning of parties, [his] wording within the suit indicate[d] what his intentions were" and that did not abandon the claims against those parties in their official capacity. The district court denied Brown leave to amend his complaint, noting that it had clearly admonished Brown to indicate the defendants' capacity. In a separate order, the district court also *sua sponte* dismissed the claims against the defendants in their individual capacity.

Brown appeals the dismissal of his (1) due process claim against "Avalon defendants" and Taylor based on the prison-like conditions of Avalon's El Paso and Forth Worth facilities; (2) due process claim against Anderson, Tarrant County, and Taylor for his confinement at the Cold Springs Jail despite posting bond and being acquitted; and (3) retaliation claim against Basham and Taylor for rejecting him from the Fort Worth facility and subjecting him to the subsequent confinement. Brown also appeals the denial of leave to file the second amended complaint.[6]

## II.

"We review a dismissal for failure to state a claim *de novo* and a denial of leave to amend a complaint for abuse of discretion." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018). To survive a motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Factual allegations must "be enough to raise a right to relief above the

---

[6] The State of Texas sought to participate in this appeal as an *amicus curiae*, submitted a brief, volunteered to appear for oral argument, and addressed the merits of the case. We deem it to have appeared as a party. On remand, the district court shall direct the State of Texas to formally appear.

speculative level." *Id.* at 555. "If a complaint is written *pro se*, we are to give it a liberal construction." *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018).

### III.

We first turn to the district court's *sua sponte* dismissal of Brown's due process claims.

### A.

Brown contends that he has stated a cognizable claim that the "Avalon defendants" and Taylor violated due process by subjecting him to prison-like conditions at Avalon's El Paso and Fort Worth facilities. We disagree.

"Although freedom from physical restraint 'has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action,' that liberty interest is not absolute." *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997) (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). A state may civilly confine those individuals "who are unable to control their behavior and who thereby pose a danger to the public health and safety." *Id.* at 357. This is true for the mentally ill who need the society's special care and for sexually violent predators who require the state's supervision and treatment. *Id.* at 360.

While such civilly committed persons are "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish," the Constitution nevertheless affords a state wide latitude in crafting a civil commitment scheme. *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982). Rightly so: the state legislatures not only are equipped, but also possess the democratic mandate, to make difficult policy choices regarding the supervision and treatment of sexually violent predators. *See Addington v. Texas*, 441 U.S. 418, 426 (1979) ("[T]he state . . . has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill."); *see also Hendricks*, 521 U.S. at 359

(observing that courts have "traditionally left to legislators the task of defining terms of a medical nature that have legal significance"); *Vandyke*, 538 S.W.3d at 567 (observing that "the [Texas] Legislature made the difficult policy determination" in amending SVPA).  Due process requires only that "the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed." *Seling v. Young*, 531 U.S. 250, 265 (2001).

Brown has not sufficiently alleged how the conditions at Avalon's facilities lacked a reasonable relation to Texas's twin goals of "long-term supervision and treatment of sexually violent predators." Tex. Health & Safety Code Ann. § 841.001; *In re Fisher*, 164 S.W.3d at 651.  Brown misses the mark as he contends that these facilities violated due process by being too prison-like. *Hendricks* forecloses such a contention.  The Supreme Court in *Hendricks* upheld Kansas's civil commitment scheme even though Kansas confined the committed persons at a prison hospital with prisoners and treated prisoners and committed persons alike.  521 U.S. at 363; *id.* at 379 (Breyer, J., dissenting).  Proximity to prisoners and restrictive conditions alone do not state a due process claim.  Moreover, Avalon's secure facilities—despite their restrictive rules and ungraceful living conditions—were reasonably related to the goals of supervision and treatment.  Under the 2005 SVPA, the Texas Legislature chose to supervise sexually violent predators by requiring them to reside at residential facilities and regularly undergo counseling.  The security measures and strict rules at Avalon's facilities, which maintained accountability of the residents and order at the facilities, furthered those goals.

Accordingly, we hold that Brown has failed to state a due process claim based on his confinement in El Paso and Fort Worth.

No. 16-11644

B.

Next, Brown contends that he has stated a valid claim that Anderson, Tarrant County, and Taylor violated due process by confining him at the Cold Springs Jail despite posting bond and being acquitted. We hold that he has stated a valid claim against Anderson and Tarrant County, but not Taylor, as to his post-bond confinement. We also hold that he has failed to state a claim as to his post-acquittal confinement.

Brown has stated a cognizable due process claim that his post-bond confinement at the Cold Springs Jail was not reasonably related to supervision and treatment. *See Seling*, 531 U.S. at 265. Brown alleges—and the state concedes—that he received *no* sex offender treatment while being held after posting bond. ROA.504 ("Defendant Tarrant County Commissioners' is aware that Tarrant County Jail facilities are not treatment centers for *offense specific sex offender treatment*, and therefore do not bear some reasonable relation to the purpose for which [Brown] was civilly committed."); *see also* ROA.100–07 (OVSOM logs showing Brown attending sex offender treatment at the Cold Springs Jail after acquittal); Oral Argument at 30:46–31:13; 37:25–39:33, *Brown v. Taylor* (No. 16-11644). If the state held Brown without providing any sex offender treatment, then the confinement could not possibly further the goals of supervision and treatment.

The state contends that Brown's confinement at the Cold Springs Jail was permissible because it was done pursuant to a civil commitment order. While the state could not release Brown on his own recognizance, the state should have nonetheless released him to a residential facility pursuant to the SVPA. And even if the Cold Springs Jail was a residential facility under contract with OVSOM, the "conditions and duration" of Brown's confinement at the Cold Springs Jail needed to bear "some reasonable relation to" supervision and treatment. *Seling*, 531 U.S. at 265. Brown has sufficiently

11

alleged that the state confined him without treatment.  At this stage, that was all that Brown was required to do:  to plead sufficient allegations to raise his right to relief above the speculative level.  *See Twombly*, 550 U.S. at 555.

The state also contends that Brown's claims are not cognizable because Anderson, Tarrant County, and Taylor did not cause Brown's confinement at the Cold Springs Jail.  As to Anderson and Tarrant County, Brown's allegations are sufficient.  Brown alleges that Anderson "agreed to confine [him] within [Anderson's] facility."  Tarrant County can be a proper defendant because Anderson is its sheriff.[7]  *See Turner v. Upton Cty., Tex.*, 915 F.2d 133, 136 (5th Cir. 1990) ("[I]n Texas, the county sheriff is the county's final policymaker in the area of enforcement . . . .").  We agree, however, that Brown has not stated a claim against Taylor.  "Section 1983 does not create supervisory or *respondeat superior* liability." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).  "Rather, a plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation." *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003) (quoting *Tomkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)).  Beside Taylor's role as the head of OVSOM, Brown has not adequately alleged that Taylor personally caused his plight at the Cold Springs Jail.  Therefore, Brown has failed to state a claim against Taylor.

As to Brown's continued confinement after his acquittal, he has not stated a cognizable due process claim.  After acquittal, the state resumed providing him with sex offender treatment and permitted him to leave the Cold

---

[7] In his *pro se* complaint, Brown named Tarrant County Commissioners' Court, instead of Tarrant County itself.  For this appeal, we will construe his complaint liberally and treat this claim as a claim against Tarrant County itself.  *See Wilson v. Dallas Cty.*, No. 3:11-CV-879-L., 2014 WL 4261951, at *6 (N.D. Tex. Aug. 29, 2014).  In any event, Brown will have the opportunity to amend his complaint and name Tarrant County on remand.

Springs Jail pursuant to his supervision level. These conditions, therefore, bore a reasonable relation to supervision and treatment.

For these reasons, we hold that Brown has stated a due process claim against Anderson and Tarrant County, but not Taylor, for his post-bond confinement at the Cold Springs Jail. Brown has not, however, stated a claim for his post-acquittal confinement at the Cold Springs Jail.

## IV.

We now turn to the district court's *sua sponte* dismissal of Brown's retaliation claim. Brown contends that he has stated a valid retaliation claim against Basham and Taylor for rejecting him from the Fort Worth facility and subjecting him to subsequent confinement.[8] We agree as to Basham but not Taylor.

"To state a valid claim for retaliation under [S]ection 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999)). "Filing a grievance is a constitutionally protected activity, and a prison official may not retaliate against a prisoner for engaging in a protected activity." *Huff v. Thaler*, 518 F. App'x 311, 312 (5th Cir. 2013); *accord Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). To show causation, a plaintiff must allege that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods*, 60 F.3d at 1166. A plaintiff must either "produce direct evidence of motivation" or "allege a chronology of events from which retaliation may plausibly be inferred." *Id.*

---

[8] Brown explicitly disclaimed that he was asserting a retaliatory arrest claim as his arrest was supported by probable cause.

No. 16-11644

Brown has sufficiently alleged not only a chronology of events that bespeaks retaliation, but also Avalon employees' statements and actions—if true—that could constitute direct evidence of retaliatory motive. *See id.* Brown filed numerous grievances regarding the conditions of confinement with the Avalon's home office. Because he filed those grievances and was known as "a problem," Basham rejected Brown from the facility. Brown alleges that Basham yelled at him that "he would not tolerate [Brown] causing problems at his facility like he did in El Paso," and that he would not tolerate [Brown] contacting [Avalon's home office] under [any] circumstances." Brown's rejection led to his subsequent arrest for violating the terms of his commitment order and 7-month confinement in county jails. Even after his acquittal, Avalon's staff told him that he would "remain in the Cold Spring Jail until he learned to quit filing grievances and lawsuits."

The district court did not engage with these factual allegations at all, much less take them as true as it was bound to do at this stage. *See Richardson*, 780 F.3d at 304–05. Instead, the district court dismissed Brown's claims against Basham on the grounds that "threatening language" and "choosing not to keep [Brown] at the facility" do not constitute a constitutional violation. This misses the point. Although rejection from the facility alone would not constitute a cognizable retaliation claim, rejection *as a measure of retaliation* for Brown's exercise of protected activity is a cognizable claim. *See Bibbs*, 541 F.3d at 271–72 (noting that although a prisoner is not "entitled to the comforts of everyday life," the plaintiff sufficiently alleged that his exposure to "below-freezing temperatures" was "a measure of retaliation"); *Jackson v. Cain*, 864 F.2d 1235, 1248 n.3 (5th Cir. 1989) (observing that although prison officials could transfer a prisoner's job assignment "for almost any reason or no reason at all," the reassignment "may not be retaliatory against [the prisoner's] exercise of constitutional rights"). While Basham

14

certainly had the discretion to reject Brown from his facility, Brown has sufficiently alleged that Basham did so to retaliate against him for filing grievances.[9]   Therefore, Brown has stated a cognizable retaliation claim against Basham.

Brown's allegations against Taylor, however, are insufficient.  Brown alleges that Taylor "forced" him to remain at Cold Springs Jail for filing grievances "through policies, practice[s], and procedures."  Beside Taylor's role as the head of OVSOM, however, Brown has not alleged Taylor's personal involvement in his confinement or actions that caused his woes.  *See Evett*, 330 F.3d at 689.  Therefore, Brown has failed to state a retaliation claim against Taylor but stated a claim against Basham.

## IV.

Brown contends that the district court abused its discretion in denying him leave to amend his complaint to include the claims against the defendants in their official capacity.  We agree.

"Rule 15(a) requires a trial court to '*freely* give leave when justice so requires.' "  *N. Cypress Med. Ctr. Operating Co., Ltd v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018) (emphasis added) (quoting Fed. R. Civ. P. 15(a)).  "[T]his mandate is to be heeded."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  A district court must provide a " 'substantial reason' to deny a party's request for leave to amend," such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment."  *N. Cypress Med.*, 898 F.3d at 477 (quoting *Marucci Sports,*

---

[9] The state asserts that Brown's retaliation claim fails because "Brown has no protectable interest under the First Amendment to disobey facility rules or refuse to sign a rules package."  State's Brief at 29.  Brown has sufficiently alleged that Basham retaliated against him for filing grievances, which is a constitutionally protected activity.

No. 16-11644

*L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)). A district court's failure to provide an adequate explanation justifies a reversal. *Id.* at 478.

The district court has not provided a substantial reason for denying Brown leave to amend his complaint. Although the district court had admonished Brown to indicate the defendants' capacity, Brown had not made any other mistakes. In other words, there was no "repeated failures to cure deficiencies" that could overcome "the presumption in favor of allowing pleading amendments." *N. Cypress Med.*, 898 F.3d at 477–78.

Moreover, Brown readily admitted his error, attempted to explain his intent to sue the defendants in their official capacity from the content of his first amended complaint, and provided a proposed amendment. *Cf. Yumilicious Franchise L.L.C. v. Barrie*, 819 F.3d 170, 177 (5th Cir. 2016) (holding that the district court did not abuse its discretion when the movant "did not include its proposed amendment" or "make an argument as to why leave to amend was appropriate"). Brown's actions neither showed a sign of bad faith nor constituted a delay tactic. *See N. Cypress Med.*, 898 F.3d at 477.

In a footnote, the district court stated that "the majority of [official-capacity] claims . . . would be barred by the Eleventh Amendment" and that "plaintiff has not pleaded facts sufficient to state a claim against Tarrant County." The state contends that the district court properly denied leave to amend the complaint as futile because the official-capacity claims would be barred. But even under the district court's stated reasoning, not all claims would be barred, and Brown could potentially state a claim against Tarrant County. *See also N. Cypress Med. Ctr.*, 898 F.3d at 478 ("For futility, '[a]n amendment is futile if it would fail to survive a Rule 12(b)(6) motion.' " (alteration in original) (quoting *Marucci*, 751 F.3d at 378)). Brown's amendment will not be futile.

16

No. 16-11644

By failing to provide a substantial reason, the district court erred in denying Brown leave to amend his complaint under these circumstances.

V.

For the foregoing reasons, we AFFIRM in part the district court's dismissal of Brown's due process and retaliation claims against Taylor and due process claims against the Avalon defendants. We VACATE the dismissal of Brown's due process claim against Anderson and Tarrant County and retaliation claim against Basham, as well as the denial of leave to amend the complaint. We REMAND for further proceedings consistent with this opinion.