[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11605

_____

RAYVON BOATMAN,

Plaintiff - Appellant,

versus

ANGELA BERRETO,
Dental Nurse,
GEORGE F. NARYSHKIN,
Dentist,
J. LAMOUR,
Facility Medical Director (M.D.),
GERALD T. DAVID,
D.D.S.,
GEO GROUP, INC., et al.,

Defendants - Appellees,

JOHN DOE,
Dentist et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

Before WILLIAM PRYOR, JORDAN, and NEWSOM, Circuit Judges.

NEWSOM, Circuit Judge:

This case is REMANDED, *sua sponte*, to the district court to determine when Rayvon Boatman delivered his *pro se* notice of appeal to authorities at the Florida Civil Containment Center (FCCC) for mailing.

Boatman's notice of appeal was filed in the district court on April 25, 2019—beyond the 30-day deadline to appeal the district court's March 20, 2019 judgment. *See* Fed. R. App. P. 4(a)(1)(A). But if Federal Rule of Appellate Procedure 4(c)(1), which is known colloquially as the "prison mailbox rule," applies to Boatman, his appeal may still be timely. That rule makes a notice of appeal filed by a *pro se* "inmate" timely "if it is deposited in the institution's internal mail system on or before the last day for filing." Fed. R. App. P. 4(c)(1) (added in 1993).

Whether the prison mailbox rule applies to a civilly committed person is a question of first impression in this Circuit. Several of our sister circuits have held that it does. *See Brown v. Taylor*, 829 F.3d 365, 369 (5th Cir. 2016); *Jones v. Blanas*, 393 F.3d 918, 926 (9th Cir. 2004); *see also Lanahan v. Warden*, 656 F. App'x 22, 23 n.3 (4th Cir. 2016). *But see Council v. Nash*, 400 F. App'x 680, 682 (3d Cir. 2010) (declining to apply the prison mailbox rule to an inmate in a Community Correctional Facility in part because he failed to show that the

"relatively lenient policies" of that facility prevented him from ensuring "that his notice of appeal was timely filed").

We agree with the majority position.  By its terms, the text of Rule 4(c)(1) "applies broadly to any 'inmate confined in an institution.'"  *Jones*, 393 F.3d at 926 (quoting Fed. R. App. P. 4(c)).  Neither the term "inmate" nor the term "institution" is defined in the Rule, but both have ordinary meanings that include Boatman and his place of confinement.  Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 6, at 69 (2012) ("Words are to be understood in their ordinary, everyday meanings—unless the context indicates that they bear a technical sense.").  At the time of Rule 4(c)(1)'s adoption, "inmate" was—and indeed still is—defined to mean "[a] person confined to a prison, penitentiary, *or the like*."  *Black's Law Dictionary* 788 (6th ed. 1990) (emphasis added); *accord Webster's Second International Dictionary* 1281 (1934) ("[O]ne confined or kept in an institution such as an *asylum*, prison, or poorhouse." (emphasis added)); *Webster's Third International Dictionary* 1165 (1961) ("[A] person confined or kept in an institution . . . [such] as an *asylum*, prison, or poorhouse." (emphasis added)).[1]  And "institution" was—and is—defined to mean "[a]n establishment, especially one of eleemosynary or public character or one

---

[1] *See also Black's Law Dictionary* 791 (7th ed. 1999) ("A person confined in a prison, *hospital, or other institution*." (emphasis added)); *Black's Law Dictionary* 941 (11th ed. 2019) ("A person confined in a prison, *hospital, or similar institution*." (emphasis added))

3

affecting a community." *Black's Law Dictionary* 800 (6th ed. 1990); *accord Webster's Second* 1288 ("An established society or corporation; an establishment, esp. one of a public character . . ."); *Webster's Third* 1171 ("[A]n established society or corporation: an establishment or foundation esp. of a public character.").[2] Civil detainees and civil-detention facilities fit comfortably within these definitions.

Nor does the text of the Rule purport to limit its application to those imprisoned for criminal violations, as is the case in related contexts. *See* Scalia & Garner, *Reading Law* § 36, at 225 ("Definition sections and interpretation clauses are to be carefully followed. . . . Individual statutes often contain definition sections giving ordinary words a limited or artificial meaning."). The Prison Litigation Reform Act, for example, contains an explicit textual limitation. *See* 42 U.S.C. § 1997e(h) (limiting the definition of "prisoner" to a person detained for "violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program"). We therefore conclude that Rule 4(c)(1) is best read to apply to anyone "[c]onfined in an [i]nstitution," whether civilly or criminally. Fed. R. App. P. 4(c).

---

[2] *See also Black's Law Dictionary* 791 (7th ed.) ("An established organization, esp. one of a pubic character, such as a facility for the treatment of mentally disabled persons."); *Black's Law Dictionary* 951 (11th ed.) (same)

Moreover, we see no good reason to construe the prison mailbox rule in an artificially narrow manner. Quite the contrary, the same considerations that led the Supreme Court to establish the rule in the first place—before its codification— apply in the civil-commitment context. Like those imprisoned for crimes, civilly detained *pro se* litigants frequently "cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30-day deadline." *Houston v. Lack*, 487 U.S. 266, 270–71 (1988). Simply by virtue of their confinement, *pro se* litigants "[c]onfined in an [i]nstitution," Fed. R. App. P. 4(c), are necessarily less able to ensure their filings' timeliness. *See Brown*, 829 F.3d at 369 (quoting *Houston*, 487 U.S. at 271) (noting that a civil detainee "like the prisoner in *Houston*—could not 'personally travel to the courthouse'").

Having concluded that Boatman is entitled to the benefit of the prison mailbox rule, we must still determine whether he has met its requirements. In this Circuit, a *pro se* inmate-litigant is presumed to have submitted his notice of appeal on the day he signed it, absent evidence to the contrary. *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) ("[T]he burden is on prison authorities to prove the date a prisoner delivered his documents to be mailed."). Boatman signed and dated his notice of appeal on March 26, 2019, well within the deadline, but the envelope that contained the notice bears an FCCC stamp

5

indicating that it was delivered for mailing on April 23, 2019.  This conflicting evidence creates a factual question to be decided in the first instance by the district court.  *Sanders v. United States*, 113 F.3d 184, 186 n.2 (11th Cir. 1997).  On remand, the district court should decide whether Boatman delivered his notice of appeal to FCCC authorities for mailing within 30 days from the entry of judgment and then return the supplemented record to this Court for further proceedings.

**REMANDED WITH INSTRUCTIONS.**