# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 9, 2022

Lyle W. Cayce
Clerk

No. 21-50541
Summary Calendar

RICHARD A. DUNSMORE, *a resident of the Texas Civil Commitment Center* & *Client of the Texas Civil Commitment Office*,

*Plaintiff—Appellant*,

*versus*

MARSHA MCLANE, *Executive Director of the Texas Civil Commitment Office*,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-128

Before SOUTHWICK, GRAVES, and OLDHAM, *Circuit Judges*.

PER CURIAM:*

Richard Dunsmore filed a Section 1983 suit against the Director of the Texas Civil Commitment Office ("TCCO"), which operates the Center where Dunmore has been civilly committed. Dunsmore claims various

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

violations of his First Amendment rights.  The district court dismissed for failure to state a claim.  We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Richard Dunsmore was involuntarily consigned to the Texas Civil Commitment Center in Littlefield, Texas, as a Sexually Violent Predator.  On February 5, 2021, he filed a *pro se* complaint under 42 U.S.C. § 1983 against the Director of the TCCO, Marsha McLane, and other TCCO employees.  Dunsmore later amended his complaint to allege that McLane violated his First Amendment rights because TCCO's correspondence policies prevented him from contacting his ex-wife, Felicia Richardson.  He argues this policy interferes with his right to correspond and associate as well as his right to access to the courts because Richardson was assisting him with legal proceedings.  He also claims the TCCO policies violated his correspondence rights because they prevented him from contacting TCCO contractors.  Finally, he alleges TCCO officials, including two identified as K- Jolley and Latitia Murff, retaliated against him for making these claims and conspired to cover up their interference with his communications.  This claim is based on an incident report and sanctions he received for sending letters to TCCO clinical examiners.  Dunsmore is proceeding *in forma pauperis*.

His case was referred to a magistrate judge.  Pursuant to the Prison Litigation Reform Act ("PLRA"), the magistrate judge issued a report that recommended dismissing Dunsmore's claims with prejudice for failure to state a claim.  Dunsmore objected.  The district court overruled those objections, adopted the magistrate judge's recommendation, and dismissed Dunsmore's complaint.  Dunsmore timely appealed.

## DISCUSSION

The PLRA requires district courts to dismiss claims brought *in forma pauperis* if those claims are frivolous or if the plaintiff fails to state a claim.  28 U.S.C. § 1915(e)(2)(B)(i), (ii).  We review *de novo* a district court's

No. 21-50541

dismissal of a prisoner's claims under the PLRA for failure to state a claim. *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998).

We apply the same standard to dismissals under the PLRA as to dismissals under Federal Rule of Civil Procedure 12(b)(6). *Id.* at 275. A prisoner's complaint will survive dismissal only "if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The prisoner must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

We begin with Dunsmore's claims that TCCO's communication policy violates his First Amendment rights to correspondence, association,[1] and access to the courts. All these claims are based on TCCO's denial of Dunsmore's request to correspond with Richardson and the TCCO

---

[1] Dunsmore's amended complaint states that he brings a claim for violation of his substantive due process right to familial relationships. The magistrate judge and district court appear to have construed this claim liberally as one alleging a violation of his First Amendment right to association. *See Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (explaining *pro se* complaints are liberally construed). We agree with this interpretation of Dunsmore's pleadings. The First Amendment right to "[i]ntimate associations generally refer[s] to the kinds of relationships that attend the creation and sustenance of a family, such as marital or parental relationships." *Mote v. Walthall*, 902 F.3d 500, 506 (5th Cir. 2018) (quotation marks and citation omitted). The substantive due process right to familial relationships, rather, refers to the protection of "family relationships and a parent's right to the care, custody, control, and management of their children." *Wooley v. City of Baton Rouge*, 211 F.3d 913, 920–21 (5th Cir. 2000). In this context, family is often defined by "biological relationships." *Id.* at 921. These considerations show Dunsmore's claims are more properly First Amendment association claims rather than substantive due process claims, given the basis of his claim is a policy regulating correspondence and the association he seeks to protect is best considered marital. Accordingly, we conclude the district court properly liberally construed Dunsmore's complaint as pleading a First Amendment association claim.

contractors.    Whether a prison's regulation violates a prisoner's First Amendment rights depends on the reasonableness of the regulation. *Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989).  We consider four factors when assessing the reasonableness of a prison regulation that infringes on First Amendment interests:

> (1) whether the regulation is rationally related to a legitimate penological goal; (2) whether alternative means of exercising First Amendment rights remain open; (3) the impact that accommodating the asserted right will have on other prisoners and prison employees; and (4) whether there are easy and obvious alternative means of accommodating the asserted right.

*Prison Legal News v. Livingston*, 683 F.3d 201, 214 (5th Cir. 2012) (citation omitted).  The prisoner bears the burden of demonstrating the regulation is not rationally related to a legitimate penological interest.  *Stauffer v. Gearhart*, 741 F.3d 574, 584 (5th Cir. 2014).

Based on this record, the defendants provided a reasonable process for a client to gain approval to correspond with outside contacts.  Specifically, TCCO policy on approving contacts and chaperones states that for a client to be allowed to contact someone, he must submit a request to the TCCO Case Manager and Treatment Provider, who in turn will approve that contact based on that individual's treatment requirements.  The Case Manager must then complete a face-to-face interview with the potential contact or, if that is not feasible, interview the contact over the phone.

This policy is rationally related to the state's goals for civil commitment.    Specifically, the state intends to provide "long-term supervision and treatment" through civil commitment to those convicted of violent sexual crimes.  *Brown v. Taylor*, 911 F.3d 235, 239 (5th Cir. 2018) (quotation marks and citation omitted).  Restricting contact according to

No. 21-50541

treatment objectives is rationally related to this goal. Moreover, the policy does not completely foreclose clients' right to correspondence so long as the contact is permitted by the client's treatment considerations, and there are also few, if any, less burdensome alternatives to accommodate the right without foregoing an approval process altogether. *See Thornburgh*, 490 U.S. at 417–19. The process to submit a request and receive approval therefore is reasonable and does not create a constitutional issue.

Moreover, Dunsmore did not pursue the process fully. TCCO never actually denied Dunsmore the ability to correspond with Richardson. Rather, Dunsmore submitted a request and then was instructed to comply with TCCO policy by submitting a collateral contact request to begin the approval process. The magistrate judge and the district court found no evidence he ever submitted that request. The procedure was reasonable, and Dunsmore did not actually receive a denial of his correspondence request. Therefore, Dunsmore did not state a claim for a First Amendment violation.

Dunsmore also alleges that the TCCO officers retaliated against him for his correspondence complaints. A prison official may not retaliate against an inmate "for complaining through proper channels about a guard's misconduct." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). "To state a valid claim for [First Amendment] retaliation under [S]ection 1983, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Brown*, 911 F.3d at 245. An act of retaliation does not constitute a constitutional violation if it is "so *de minimis* that [it] would not deter the ordinary person from further exercise of his rights." *Morris*, 449 F.3d at 686.

Dunsmore alleges acts that even if done with retaliatory motive would be too *de minimis* to be considered a constitutional violation. The only

No. 21-50541

retaliative acts he alleges are related to the officers' filing an incident report that indicated he was "sending harassing correspondence to biennial examiners without receiving approval" and was given "verbal warning" related to those letters that included a reminder of the rules prohibiting such contact with prior approval. The record therefore does not show Dunsmore suffered any significant consequences as a result of the allegedly retaliatory actions. His allegations therefore are not sufficient to raise a claim of retaliation. *See Petzold v. Rostollan*, 946 F.3d 242, 254 (5th Cir. 2019) (concluding allegedly retaliatory actions were *de minimis* because inmate suffered no "serious consequences").

Finally, Dunsmore identifies Jolley and Murff as two TCCO officials who conspired to interfere with his First Amendment rights. His complaint contains no factual allegations to support such allegation. The claim fails.

AFFIRMED.