**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 00-40177

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

MANUEL ALBERTO MARTINEZ, also known as James A. Dupont, also known as Albert Longoria,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Texas

---

August 27, 2001

Before SMITH, DUHÉ and WIENER, Circuit Judges.

DUHÉ, Circuit Judge:

Appellant Manuel Alberto Martinez ("Martinez") appeals his sentence for mail fraud, theft from organizations receiving federal funds, and money laundering, in violation of 18 U.S.C. §§ 1341, 666(a)(1)(A), and 1956(a)(1)(B)(i), respectively. He raises three challenges. Because we find no error by the district court in connection with one challenge, that appeal of another was waived by his plea agreement, and that we lack jurisdiction to consider the remaining challenge, we dismiss in part and affirm in part.

BACKGROUND

Martinez served as the City Clerk for the city of La Feria, Texas. During his tenure, he falsified numerous city records in order to misappropriate money from the city and from entities making payments to the city. Martinez pleaded guilty to one count each of mail fraud, theft from an organization receiving federal funds, and money laundering, in return for favorable sentencing recommendations from the government. As part of this agreement, Martinez waived his right to appeal his sentence, unless (1) his sentence was illegal, as set forth in 18 U.S.C. § 3742(a); (2) he alleged claims of ineffective assistance of counsel; or (3) he alleged claims of prosecutorial misconduct.

The Pre-Sentence Report ("PSR") recommended that because the counts to which Martinez pleaded guilty involved substantially the same harm, they should be grouped. Under § 3D1.3(a) of the United States Sentencing Commission Guidelines, when counts are grouped together, the applicable offense level is the highest offense level of the counts in the group. Therefore, the PSR recommended that Martinez be sentenced at the level for his most serious offense – money laundering. The PSR then recommended increasing his offense level by four, because his offense involved more than $600,000 but less than $1,000,000. See U.S.S.G. § 2S1.1(b)(2)(E) (1998). It recommended adding two levels under § 3B1.3, because Martinez had abused a position of trust, and another two levels pursuant to § 3C1.1 for obstruction of justice. Three levels were subtracted for

2

acceptance of responsibility, yielding a total offense level of 25. The PSR then recommended a sentencing range of 57–71 months.

Martinez lodged numerous objections to the PSR, but the district court sustained only his objection to the imposition of the upward adjustment for abuse of trust. The court then sentenced him to 57 months of imprisonment, the highest sentence possible at the newly-calculated range. It also imposed a term of three years' supervised release, and ordered Martinez to pay $953,322.07 in restitution.

Martinez appeals his sentence and the restitution order, contending that the district court erred by (1) using the money laundering count to calculate the applicable offense level; (2) relying on the PSR's findings about the amount of loss; and (3) applying the upward adjustment for obstruction of justice.

DISCUSSION

I.   Waiver

The government argues that pursuant to his plea agreement, Martinez waived his right to appeal his sentence and the manner in which it was calculated. Moreover, because Martinez failed to file a reply brief responding to the government's waiver theory, the government contended at oral argument that Martinez has waived any right to argue against that theory, therefore, his appeal should be dismissed.

Generally speaking, a defendant waives an issue if he fails to adequately brief it. See United States v. Thames, 214 F.3d 608,

3

611 n.3 (5th Cir. 2000); see also Fed. R. App. P. 28(a)(9)(A) (Appellant's brief must contain his "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies . . . ."). Indeed, our court has even gone so far as to sanction defense counsel for bringing a claim on appeal that is plainly barred by the plea agreement, and failing to explain why the defendant's claims are not waived. See United States v. Gaitan, 171 F.3d 222, 224 (5th Cir. 1999).

Although Martinez's counsel offered no excuse for the gross failure to brief this issue, we will nevertheless consider the appeal. "[T]he issues-not-briefed-are-waived rule is a prudential construct that requires the exercise of discretion." United States v. Miranda, 248 F.3d 434, 443 (5th Cir. 2001). We elect to exercise our discretion because the defendant's waiver of his right to appeal would deprive us of jurisdiction, see United States v. Henderson, 72 F.3d 463, 465 (5th Cir. 1995) (treating the waiver of an appeal right as a jurisdictional question), and we may examine Martinez's plea agreement sua sponte to determine whether we may hear his claims. See Goonsuwan v. Ashcroft, 252 F.3d 383, 385 (5th Cir. 2001). Moreover, as we will develop more fully below, we find this case distinguishable from Gaitan, in that at least some of Martinez's claims are not plainly barred by his plea agreement waiver. Therefore, we will exercise our Rule 28 discretion to consider whether Martinez has preserved his claims for appeal.

A defendant may knowingly and voluntarily waive his right to

4

appeal in a valid plea agreement. See United States v. Melancon, 972 F.2d 566, 567-68 (5th Cir. 1992). Martinez has not argued that his waiver was uninformed or involuntary, nor does the record admit of any doubt as to Martinez's understanding of and free consent to the waiver. However, the plea agreement provided that it did not "affect the rights of the defendant to appeal an illegal sentence as set forth in Title 18, United States Code, Section 3742(a)." This statute provides that a defendant has a right to appeal his sentence if it "(1) was imposed in violation of law; (2) was imposed as a result of an incorrect application of the sentencing guidelines; or (3) is greater than the sentence specified in the applicable guideline range . . . ; or (4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable." 18 U.S.C. § 3742(a). The plea agreement exception for claims brought pursuant to § 3742(a) may negate most of the waiver, and we must construe all ambiguities in the plea agreement against the government. See United States v. Somner, 127 F.3d 405, 408 (5th Cir. 1997).

Martinez raises three issues: (1) his offense level should have been calculated using the fraud count, not the money laundering count; (2) the court should not have relied on the PSR's findings regarding the amount of the loss attributable to Martinez, and (3) the upward adjustment for obstruction of justice was not warranted. We hold that Martinez's first and third points of contention clearly allege a misapplication of the sentencing

5

guidelines under § 3742(a)(2) so are not waived by his plea agreement. However, Martinez's second issue regarding the court's adoption of the PSR's determination about the amount of loss, is plainly waived by the agreement. Martinez's argument on this point challenges the district court's fact finding, and therefore does not fall within any of the four exceptions contained in § 3742(a).[1] We dismiss the appeal as to that claim.

II. Offense Level Determination

Martinez contends that the district court should have used the fraud count to calculate his base offense level, rather then the money laundering count. The court followed § 3D1.2 of the guidelines, which requires that counts involving substantially the same harm be grouped together. Martinez does not object to this grouping. The court then went on to apply § 3D1.3(a), which instructs that when multiple counts of conviction are grouped, the court should apply the offense level corresponding to the most serious offense in the group. Accordingly, the court applied the

---

[1] Martinez does, however, also contend that the court's adoption of these findings constituted a denial of due process because they were materially inaccurate. See United States v. Smith, 13 F.3d 860, 866-67 (5th Cir. 1994). Even if we were to accept that such a claim alleged that his sentence was imposed in violation of law under § 3742(a)(1), and therefore was not waived, the claim would fail. Martinez presented absolutely no evidence demonstrating that the information in the PSR was materially untrue. See United States v. Glinsey, 209 F.3d 386, 393 (5th Cir.), cert. denied, 531 U.S. 919, 121 S. Ct. 282 (2000) (noting the defendant bears the burden of demonstrating that the information in the PSR is materially inaccurate, and if the defendant fails to carry his burden the court may adopt the PSR findings without further explanation).

offense level applicable to the money laundering count, i.e., the highest offense level in the group.  Martinez, however, contends that the court erred in its interpretation of the guidelines, because it failed to conduct a "heartland" analysis to determine if his conduct was the type that the money laundering statute was designed to punish.  Although he concedes that § 3D1.3(a) directs the court to use the highest offense level, he points out that the introduction to Appendix A of the guidelines states: "If, in an atypical case, the guideline section indicated for the statute of conviction is inappropriate because of the particular conduct involved, use the guideline section most applicable to the nature of the offense conduct charged in the count of which the defendant was convicted."  U.S.S.G., app. A at 425 (1998).

We review the district court's interpretation of the guidelines de novo, and its findings of fact for clear error.  United States v. Hill, 42 F.3d 914, 916 (5th Cir. 1995).  If, however, the district court recognizes its discretion to depart downward from the sentencing guidelines and refuses to do so, that decision, unless based on a violation of law, is unreviewable on appeal.  United States v. Buenrostro, 868 F.2d 135, 139 (5th Cir. 1989).

Relying on United States v. Smith, 186 F.3d 290, (3rd Cir. 1999), Martinez urges us to conduct a de novo review of the court's decision to calculate his base offense level according to the money laundering count.  In Smith, the Third Circuit held that in

7

"atypical cases," the guidelines require that the court determine whether the defendant's offense conduct falls in the "heartland" of the applicable guideline, i.e., "'a set of typical cases embodying the conduct' described in each guideline." Id. at 297-98 (citations omitted). The court must conduct this analysis at two stages: first, when making the initial choice of the appropriate guideline, and second, in the context of a departure request. Id. at 298. In the former situation, the court's decision is a "legal function that requires the court to interpret the guideline in light of its intention or purpose," therefore, it is subject to plenary review. Id. If, however, the court decides to deny a departure request, the Third Circuit acknowledged that decision is not subject to appellate review. Id. at 297.

Martinez urges us to consider the court's decision in his case as an initial selection of the applicable guideline. He also contends that the legislative history of the money laundering guideline indicates that the guideline was intended to cover offenses where: (1) the laundered funds derived from serious underlying criminal conduct such as drug trafficking; (2) the financial transaction was separate from the underlying crime and was undertaken either to (a) make it appear that the funds were legitimate, or (b) promote additional criminal conduct. According to Martinez, his is an "atypical case" which did not involve the aforementioned conduct, and which more properly implicates the base

8

offense level for fraud.[2]

Our circuit, however, has not applied the Smith test. Rather, we have interpreted the heartland analysis as a permissive basis for exercising discretion to apply a downward departure, rather than a component of the initial selection of the applicable guideline. See, e.g., United States v. McClatchy, 249 F.3d 348, 359-60 (5th Cir. 2001); United States v. Wilson, 249 F.3d 366, 379-80 (5th Cir. 2001); United States v. Dadi, 235 F.3d 945, 954-55 (5th Cir. 2000), cert. denied, 121 S. Ct. 2230 (2001); United States v. Davis, 226 F.3d 346, 359 (5th Cir. 2000), cert. denied, 121 S. Ct. 1161 (2001); United States v. Hemmingson, 157 F.3d 347, 360 (5th Cir. 1998); United States v. Leonard, 61 F.3d 1181, 1185 (5th Cir. 1995); and United States v. Willey, 57 F.3d 1374, 1391-92 (5th Cir. 1995). Our approach is more consistent with the overall intent of the guidelines, as set forth in the introduction to the Guidelines Manual:

> The Commission intends the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline

---

[2]We note in passing that Smith is no longer good law. Congress adopted Amendment 591 to the sentencing guidelines, effective November 1, 2000, specifically in response to the issue addressed in Smith. "Under the guidelines as amended, sentencing courts may not conduct an inquiry into the heartland of [the guideline applicable to money laundering] and courts have no discretion to decide that the money laundering guideline is inappropriate or not the most applicable guideline on the facts of a given case." United States v. Diaz, 245 F.3d 294, 303 (3rd Cir. 2001). However, Martinez was sentenced before the amendment became effective, and the amendment does not apply retroactively. See id. at 303-04.

> describes.  When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S.S.G. ch. 1, pt. A, § 4(b) (1998).

The district court in Martinez's case determined to use the money laundering count to calculate his base offense level after conducting the proper heartland analysis.  There is no indication anywhere in the record that the court believed it did not have the authority to apply a downward departure and sentence Martinez according to the fraud count rather than the money laundering count.  Therefore, because the court's decision was a refusal to grant a downward departure, we cannot review it.  See Dadi, 235 F.3d at 954.  We, therefore, dismiss the appeal as to that issue.

III. Obstruction of Justice Enhancement

Section 3C1.1 provides that the court may increase a defendant's offense level if:

> (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense . . . . .

The PSR recommended a two level increase because, several months prior to his June 1998 arrest, Martinez obstructed justice by transferring assets to certain business entities to evade investigators; acquired a false passport in order to evade authorities; and failed to appear before a state justice of the

10

peace on state charges arising from the same conduct which formed the basis of his federal offense. Martinez was a fugitive thereafter, and during this time his family filed a missing persons report for him.

The district court overruled Martinez's objection to the obstruction enhancement. The court appeared to focus on the failure to appear, stating: "I find that he willfully – that this conduct was willful in that he failed to appear – for a judicial proceeding. And these are all events that had to do with the state charges that ultimately . . . were subsumed [into the federal prosecution]."

Martinez argues that the court erred in imposing the enhancement because (1) he was unaware of any federal investigation of his conduct prior to his arrest on federal charges; (2) the testimony of an FBI agent at the sentencing hearing rendered questionable the PSR's finding that Martinez was a fugitive, and (3) the failure to appear occurred in connection with a state prosecution, so it could not have occurred "during the course of the investigation, prosecution, or sentencing of the <u>instant</u> offense of conviction." At oral argument, Martinez's counsel also asserted that there is no clear indication in the record of when the federal investigation began.

"A finding of obstruction of justice under § 3C1.1 is a factual finding reviewed for clear error." <u>United States v. Upton</u>, 91 F.3d 677, 687 (5th Cir. 1996). "However, we review the district

11

court's interpretation or application of the sentencing guidelines de novo." Id.

We find it unnecessary to decide whether Martinez's failure to appear on state charges may serve as grounds for an enhancement of his sentence for federal offenses based on the same underlying criminal conduct. This is so because there is other evidence in the record sufficient to justify the application of the obstruction of justice enhancement. Specifically, we are persuaded by the evidence that Martinez obtained a false passport for the purpose of evading authorities, and that he transferred numerous assets to businesses entities controlled by him or his family members in the months prior to his arrest.[3] The district court adopted the PSR's fact findings. Further, despite Martinez's contention to the contrary, the record clearly shows that the FBI investigation commenced at the end of 1996, well before Martinez's obstructive conduct. The factual summary attached to Martinez's plea agreement, which Martinez initialed on every page and then signed, notes that the FBI investigation was initiated on December 16, 1996, the last day that Martinez reported for work in the City

---

[3]See U.S.S.G. § 3C1.1, cmt. n.4(c) and (d) (1998), noting that the following conduct may justify imposition of the enhancement:

> (c) producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation . . .

> (d) destroying or concealing . . . evidence that is material to an official investigation or judicial proceeding . . . .

12

Clerk's office.  This summary was read in open court when Martinez entered his plea, and Martinez confirmed under oath that the summary was true.[4]  Therefore, we conclude that, although for reasons other than those stated by the district court, Martinez "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation" of Martinez's federal offenses, and that such conduct was clearly related to his federal offenses.  The court's enhancement of Martinez's sentence under § 3C1.1 was not error.

AFFIRMED IN PART and APPEAL DISMISSED IN PART.

---

[4]Martinez did not agree with the amount of the loss attributed to him by the government, but upon further questioning by the court, he confirmed that he had no other objection to the factual summary:

THE COURT: Then am I correct in believing that the reason that you're pleading guilty is because what the Government has just recited as the evidence is, in fact, true?  Now, you've told me that you disagree with the totals, especially the $950,000, but I'm asking you whether you are pleading guilty to the offense of mail fraud, theft from organizations receiving federal funds, and money laundering because the actions that the Government has summarized as your being guilty of are, in fact, true?

THE DEFENDANT: Yes, ma'am.

Record, vol. 2, at 46.