# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

December 28, 2010

No. 09-30705

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CHARLES NEUMAN,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:08-CR-24-1

Before JOLLY, HIGGINBOTHAM, and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

On January 29, 2009, Charles Neuman was convicted of facilitating the importation of counterfeit Nike shoes into the United States, of conspiring to traffic in such goods, and of trafficking in such goods.[1] At trial, the government called numerous witnesses to establish Neuman's guilt, including an Immigration and Customs Enforcement ("ICE") agent who investigated Neuman,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Neuman was also convicted of being a felon in possession of a firearm, but he does not appeal that conviction.

No. 09-30705

individuals who sold Neuman counterfeit products, his employees, and his ex-girlfriend. The government also showed, over objection, that Neuman had accumulated substantial gambling losses, and that Tracy Maniecki, one of Neuman's customers, complained that the shoes she had purchased from him were fake. At sentencing, Neuman requested, and was denied, a downward departure based on the disparity between the $7,642.07 reimbursement he paid to Nike and the full trademark infringement resulting from his actions--some $632,075.00. Neuman appealed on four grounds: the insufficiency of the evidence offered to demonstrate that he knew that the goods were counterfeit and knew that they had come from China; the admission of Maniecki's complaints; the admission of his gambling losses; and the sentence imposed. Finding no error, we AFFIRM.

I.

In February 2006, ICE began investigating an influx of counterfeit Nike items into New Orleans from China, and it learned that Neuman was a supplier of these products. On October 18, 2007, after monitoring Neuman for months, ICE agents obtained a warrant and searched the warehouse registered to Neuman's company, Xxxcyte, and seized many counterfeit items. After completing its search, ICE told Neuman that he was suspected of selling counterfeit items, but he was not taken into custody. Subsequently, he sold some of the goods that he had stored at a separate location. Finally, following his arrest, Neuman told a fellow prisoner that he knew that the goods he had been selling were counterfeit. All of the foregoing was established at trial.

In addition, a Nike employee testified that the seized Nikes were counterfeit; her testimony was corroborated by a specially trained government investigator. The government showed, over objection, that Tracy Maniecki informed Neuman's then girlfriend, Pou Vatthongxay, that the shoes she had purchased from Neuman were counterfeit, and that when Vatthongxay told

2

No. 09-30705

Neuman of Maniecki's complaint, he did not deny it, and instead instructed Vatthongxay to refund Maniecki's money. Testimony also showed that Neuman told his employees, after they had been robbed at gunpoint inside the warehouse, that because he did not want the police to be inside the warehouse, the employees should lie and say that they had been robbed outside. There was also testimony that the goods were sold under Xxxcyte's umbrella, that Neuman handed out business cards; that he had his wholesaler's license; and that customers had been permitted to visit the warehouse. The government also showed that Neuman's supplier told him that the goods came from China, and that Neuman told one of his employees the same thing. The supplier conceded, however, that Neuman never instructed him to obtain goods from China, and the supplier's wife admitted that Neuman was unaware of trips she had made to China to secure items. Over Neuman's objection, the government also offered testimony to show that he had incurred heavy gambling losses.

After the four day trial, Neuman was found guilty. He made several post-trial motions, none of which are relevant here. Thereafter, at sentencing, he sought a downward departure from the sentence suggested by the guidelines, arguing that although he had infringed Nike's trademark to the tune of $632,075.00, his sentence should reflect the $7,642.07 he was ordered to pay Nike in restitution, saying that amount reflected Nike's pecuniary harm. After considering the objection, the court overruled it and, after applying several enhancements, imposed a guidelines sentence of 210 months.

Neuman appealed, arguing that the evidence was insufficient to demonstrate the *mens rea* necessary to support the conspiracy, trafficking, and smuggling charges; that the trial court abused its discretion by allowing the evidence regarding his gambling habit and the e-mails to be admitted; and that the trial court abused its discretion by denying a downward departure.

No. 09-30705

II.

Before determining whether the evidence presented was sufficient to sustain the convictions, we will address Neuman's argument that the evidence regarding his gambling losses and Maniecki's e-mails was improperly admitted. Neuman objected to this evidence at trial, so we review for an abuse of discretion. *United States v. Griffin*, 324 F.3d 330, 347 (5th Cir. 2003).

A.

Neuman, in conclusory fashion, argues that this testimony regarding his gambling losses was irrelevant and prejudicial, and therefore should not have been admitted. *See* FED. R. EVID. 402, 403. He does not, however, address the trial court's rationale for permitting the evidence to be admitted--that it potentially was indicative of Neuman's criminal motive or criminal intent, and therefore admissible under FED. R. EVID. 404(b). Faced with Neuman's deficient briefing, we decline to address the issue's merits, and hold that the trial court did not abuse its discretion. *United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001) (failure to properly brief an issue leads to waiver).

B.

Neuman contends that the e-mails exchanged between Vatthongxay and Maniecki were inadmissible hearsay. The government responds that the e-mails were not offered for their truth, i.e., to show that Maniecki bought fake shoes from Neuman, but instead to show that Vatthongxay was made aware there might be an issue with the authenticity of the goods.[2] Evidence was then admitted to show that Vatthongxay informed Neuman of Maniecki's complaints, and that he did not protest, but told Vatthongxay to refund Maniecki's money.

---

[2] In his brief, Neuman claims that the evidence was admitted to show Maniecki's state of mind. At oral argument, Neuman's counsel argued that this was a distinction without a difference, as, in either case, no hearsay exception is applicable. Although this position is, at best, questionable, we will, for the sake of argument, entertain his argument on the merits.

No. 09-30705

In short, the e-mails were introduced to provide context, ultimately allowing the prosecution to show that Neuman was on notice that he might be peddling counterfeit goods. We thus find no abuse of discretion in the trial court's decision to permit the e-mails to be introduced; they were not offered for their truth, and are therefore not hearsay. *See* FED. R. EVID. 801(c) (hearsay rule extends only to out of court statements that are offered to prove "the truth of the matter asserted.").

### III.

Neuman challenges, for the first time on appeal, the sufficiency of the evidence introduced at trial, meaning we can reverse only if the record is so "devoid of evidence pointing to guilt" that the conviction creates "a manifest miscarriage of justice." *United States v. Ruiz*, 860 F.2d 615, 617 (5th Cir. 1988) (internal marks and citation omitted). Each of the statutes underlying the challenged convictions required the government to establish that Neuman acted knowingly. *See* 18 U.S.C. §§ 371, 545, 2320.[3] He now acknowledges that the goods were counterfeit and imported from China, but he argues that the evidence does not show that he was aware of these facts when he was selling the goods.

Neuman argues that his supplier did not tell him the goods were counterfeit, and that he believed the goods were wholesale items; that he created Xxxcyte to sell the goods; that he handed out Xxxcyte business cards, and that he allowed customers to visit Xxxcyte's warehouse. Neuman also argues that it was unclear to the untrained eye that the goods were counterfeit, a point the government concedes. Neuman further argues that because he did not know the

---

[3] We have previously recognized that Section 371 requires proof that the defendant "knew [his] conduct was unauthorized and illegal." *United States v. Hopkins*, 916 F.2d 207, 213 (5th Cir. 1990) (internal marks and citations omitted). Neuman does little to specifically challenge the conspiracy count, but, if we agree that he did not know that he was engaged in illicit activity, we would be required to overturn the conspiracy conviction.

No. 09-30705

goods were counterfeit, and instead thought that they were closeout items, he was not aware that they were being illegally smuggled into the United States. *See* 18 U.S.C. § 545.  Finally, Neuman argues that the admissions from his supplier, and the supplier's wife, that Neuman never asked them to buy their goods in China, and was unaware of their dealings in China, demonstrate that he did not know that the goods came from China.

The government says that the evidence was sufficient to show that Neuman knowingly violated the law.  The government emphasizes that he refunded Maniecki's purchase after she complained that the goods were fake; that he did not want law enforcement in his warehouse, even though he and his employees had been robbed at gunpoint; that after being informed of the charges against him, he sold the remaining goods that he had stored in another location; and that he told a fellow prisoner that he knew the goods were counterfeit.  The government further asserts that the record is not "devoid of evidence" to demonstrate that Neuman knew the goods had been smuggled into the country, because the record shows that his supplier told him that the goods came from China, and Neuman told one of his employees the same thing.

To summarize, Neuman was put on notice, on two occasions--once by Tracy Maniecki, and once by the ICE agent--that he might be selling counterfeit products, but he continued to sell them.  He admitted to a fellow prisoner that the goods were counterfeit.  Following a harrowing robbery, he did not want the police to enter his warehouse.  Finally, Neuman's supplier told him the goods came from China, and Neuman admitted as much to one of his employees.  In short, because the record is not so "devoid of evidence" as to create a "manifest miscarriage of justice," we affirm Neuman's conviction.  *See Ruiz*, 860 F.2d at 617.

No. 09-30705

IV.

Having concluded that the government offered sufficient evidence to establish Neuman's guilt, we must determine whether the trial court abused its discretion by imposing a guidelines sentence of 210 months. When we review the substantive reasonableness of a sentence, we review for an abuse of discretion. *United States v. Gutierrez-Hernandez*, 581 F.3d 251, 254 (5th Cir. 2009). In so doing, we consider whether the sentence "1) does not account for a factor that should receive significant weight, 2) gives significant weight to an irrelevant or improper factor or 3) represents a clear error of judgment in balancing the sentencing factors." *United States v. Smith*, 440 F.3d 704, 708 (5th Cir. 2006). We presume that sentences that fall within the sentencing guidelines are reasonable. *United States v. Nikonova*, 480 F.3d 371, 376 (5th Cir. 2007). To rebut that presumption it must be shown that the "sentence falls so far afoul of one of the standards in *Smith* as to constitute clear error in the court's exercise of its broad sentencing discretion." *Id.*

Neuman argues that the trial court abused its discretion in imposing a sentence that reflects the infringement amount, which was $632,075.00, instead of the amount of the restitution he paid to Nike, which was $7,642.07. Neuman argues that the trial court should consider a downward departure in the face of such disparities. *See* U.S.S.G. § 2B5.3, n.4(c). If viewed in the light of *Smith*, his argument appears to be that the trial court failed to account for a factor that should receive significant weight, or that it committed a clear error in judgment in weighing that factor under the circumstances of this case. The government argues that the trial court considered, but rejected, Neuman's argument, and, in upholding the sentence imposed in *Nikonova*, we found it significant that the trial court fully considered the defendant's objections. 480 F.3d at 377.

As argued by the government, the trial court considered the disparity between the infringement amount and the restitution paid to Nike, but

No. 09-30705

determined that the sentence should reflect the former instead of the latter, and therefore elected to impose a guidelines sentence instead of granting a downward variance. In so doing, it did not give improper weight to any factor, fail to account for any factor, or commit a clear error of judgment in balancing the sentencing factors.[4] In short, Neuman has failed to rebut the presumption of reasonableness attached to sentences that fall within the guidelines, *see id.* at 376-77, and we affirm his sentence.

V.

We have held that the trial court did not abuse its discretion by permitting the government to introduce evidence of Neuman's gambling activities and evidence of a series of e-mails exchanged between his then girlfriend and one of his customers. We have further held that the government presented sufficient evidence to demonstrate that Neuman was aware of the nature of his actions, i.e., he had conspired with others to deal in counterfeit goods, had knowingly dealt in counterfeit goods, and knowingly facilitated the importation of such goods into the United States from China. Finally, we have held that the trial court did not abuse its discretion by sentencing Neuman to 210 months in prison, even though the sentence reflects the full infringement amount, instead of the restitution Neuman paid to Nike. The judgment of the district court is therefore, in all respects,

AFFIRMED.

---

[4] We also recognize that the restitution paid to Nike was so low only because Nike sought to regain only its expenses incurred in helping to prosecute the case, instead of seeking to recover a larger amount. *See* 18 U.S.C. §§ 2323, 3663A (providing that victims are entitled to recover the value of their property that has been stolen).