# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 9, 2021

Lyle W. Cayce
Clerk

No. 19-10825

Lonnie Kade Welsh,

*Plaintiff—Appellant*,

*versus*

Correct Care Recovery Solutions; Chris Woods, *Individually as Director of Security, Texas Civil Commitment Center for Correct Care Recovery Solutions*; Amy Goldstein, *Individually as Clinical Director at Texas Civil Commitment Center for Correct Care Recovery Solutions*; Edward Towns, *Individually as Clinical Director at Texas Civil Commitment Center for Correct Care Recovery Solutions*; Bill Vanier, *Individually as Captain of Security at Texas Civil Commitment Center for Correct Care Recovery Solutions*; Et Al.,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:18-CV-20

Before Stewart, Higginson, and Wilson, *Circuit Judges*.

STEPHEN A. HIGGINSON, *Circuit Judge*:*

Lonnie Kade Welsh, Texas prisoner # 6516607, brought this action under 42 U.S.C. §§ 1983, 1985, and 1986 asserting more than a dozen claims against even more defendants. Welsh was a civilly committed sexually violent predator (SVP) prior to his imprisonment. His claims concern assorted wrongs he allegedly suffered while civilly committed. But he filed suit only later, proceeding pro se and *in forma pauperis* (IFP).

Welsh consented to proceedings before a magistrate judge. The magistrate judge dismissed Welsh's suit after obtaining authenticated records and holding a *Spears*[1] hearing. In a meticulous order, the magistrate judge determined that some defendants were not amenable to suit because they had no juridical existence, some defendants enjoyed prosecutorial immunity, some claims were *Heck*[2]-barred, and other claims were frivolous. The magistrate judge dismissed all of Welsh's federal claims with prejudice, denied leave to amend the complaint, and denied Welsh's motion for reconsideration and motion to vacate judgment under Federal Rules of Civil Procedure 59(e) and 60(b). Welsh timely appealed, and the magistrate judge granted his motion to proceed IFP on appeal.

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

[1] *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989). A *Spears* hearing "aims to flesh out the allegations of a prisoner's complaint to determine whether *in forma pauperis* status is warranted or whether the complaint, lacking an arguable basis in law or fact, should be dismissed summarily as malicious or frivolous under section 1915[]." *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996).

[2] *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). Under *Heck*, a § 1983 plaintiff generally cannot recover damages for harm caused by actions whose unlawfulness would upset a conviction or sentence without first proving that the conviction or sentence has been reversed or invalidated. *Id.*

No. 19-10825

"We review a district court's dismissal of an *in forma pauperis* complaint as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) for an abuse of discretion. A claim may be dismissed as frivolous if it does not have an arguable basis in fact or law." *Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009) (citations omitted). By and large, we find the magistrate judge's careful analysis correct. Accordingly, we AFFIRM in large part, VACATE in part, and REMAND for further proceedings.

## I.

Welsh first challenges the magistrate judge's dismissal of his excessive-force claims, which arose out of four separate incidents between Welsh and security personnel during his period of civil commitment. The magistrate judge dismissed two of these claims as *Heck*-barred. The Supreme Court held in *Heck v. Humphrey* that, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ." 512 U.S. at 486–87. Welsh argues that *Heck* does not apply because one underlying conviction has been overturned and the other is separable from his § 1983 claim. The magistrate judge dismissed Welsh's other two excessive-force claims, applying an objective reasonableness standard and finding that the force used against Welsh was not objectively unreasonable.

## A.

### i.

Welsh argues that the excessive-force claim that he raised in Count 10 of his amended complaint is no longer *Heck*-barred. This claim arose from a

No. 19-10825

November 2017 incident in which several officers used force on him after he refused to accept housing. In the original judgment, which was entered on April 24, 2019, the magistrate judge noted that this incident resulted in Welsh filing a criminal complaint against officers, alleging that they had assaulted and injured him. The resulting investigation found these allegations untrue and resulted in Welsh receiving a new criminal conviction for fabricating evidence. The magistrate judge concluded that this claim was barred by *Heck* because success on it would necessarily undermine his conviction for fabricating evidence against the officers.

In his Rule 59(e) motion, which was filed in May 2019, Welsh pointed out that this conviction was overturned by the intermediate appellate court in February 2019. *Welsh v. State*, 570 S.W. 3d 963, 965 (Tex. App. 2019). The magistrate judge acknowledged this decision but noted that the State had filed a petition for discretionary review with the Texas Court of Criminal Appeals. On that basis, the magistrate judge concluded that the order vacating the conviction was not yet final and that the conditions of *Heck* thus had not been met.

We need not determine whether the magistrate judge erred in holding that *Heck* applied to Welsh's excessive-force claim based on the pendency of the State's petition for review of the Texas appellate court's reversal of Welsh's evidence-fabrication conviction.[3] Welsh now informs us that the

---

[3] Some courts have agreed with the magistrate judge that a reversed conviction must be a *final* one to satisfy *Heck*. *See, e.g.*, *Michaels v. New Jersey*, 955 F. Supp. 315, 324–25 (D.N.J. 1996) ("[I]n order to maintain a § 1983 claim for an unconstitutional conviction or imprisonment where success on such a claim would necessarily imply the invalidity of an outstanding or potential conviction, there must first be a 'final' termination of the criminal proceeding in favor of the plaintiff. Without such finality, the potential for inconsistent determinations in the civil and criminal cases will continue to exist . . . ."); *Kelly v. Serna*, 87 F.3d 1235, 1240 n.3 (11th Cir. 1996) (holding similarly). But our precedent may be in tension with that approach. *See Davis v. Zain*, 79 F.3d 18, 18-20 (5th Cir. 1996)

petition for review has been denied and asserts that his claim is no longer *Heck*-barred. Welsh is correct that *Heck* does not bar a § 1983 action raising claims concerning an overturned conviction. *Clay v. Allen*, 242 F.3d 679, 681 (5th Cir. 2001). Because of the possibility of an intervening conviction reversal, this court has reminded district courts that "[a] preferred order of dismissal in *Heck* cases decrees, 'Plaintiff['s] claims are dismissed with prejudice to their being asserted again *until the* Heck *conditions are met*.'" *Deleon v. City of Corpus Christi*, 488 F.3d 649, 657 (5th Cir. 2007) (emphasis added) (quoting *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996)). Yet here, the magistrate judge dismissed Welsh's claim with prejudice, full stop. Regardless whether dismissal of this claim is reviewed de novo or for an abuse of discretion, because *Heck*'s conditions have now been met, the dismissal of Welsh's excessive-count claim under Count 10 is VACATED and REMANDED.

## ii.

Welsh next challenges the magistrate judge's dismissal of the excessive-force claim he raised in Count 1. This claim arose from another run-in with security personnel, this one in January 2016: Welsh alleges that several officers used force on him in retaliation for his exercise of his purported free-speech right to refuse orders. According to the complaint, Welsh had an argument with Officer Hawthorne, who refused to permit him to return to his housing area. Captain Salazar then ordered Welsh to follow her so she could place him in isolation; Welsh refused and returned to his housing area. Salazar returned with other officers, who informed Welsh that he had to go to isolation and refused to let him bring his things. Welsh resisted

---

(concluding that a plaintiff whose conviction for murder was overturned on the grounds of prosecutorial misconduct and subornation of perjury could bring a § 1983 claim despite *Heck*, even though he faced retrial on the murder charge).

being taken to isolation; once there, Captain Vanier allegedly ground handcuffs into Welsh's ring finger injuring him. At some point during this episode, Welsh bit Salazar. He later pleaded guilty to assault causing bodily injury. The magistrate judge determined that this claim, too, was *Heck*-barred because a finding that Salazar, Vanier, and others used excessive force against Welsh "would necessarily imply the invalidity of Welsh's underlying [assault] conviction."

Welsh does not argue that this conviction has been overturned. Rather, he contends that Vanier's application of excessive force against Welsh with the handcuffs is separable from Welsh's assault on Salazar for purposes of his § 1983 claim. This may be so.

The inquiry whether an excessive-force claim is barred under *Heck* is "analytical and fact-intensive" and requires a court to consider whether "success on the excessive force claim *requires* negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008) (emphasis added). In *Bush*, we held that *Heck* did not bar a plaintiff convicted of resisting arrest from bringing an excessive-force claim arising from the same conduct where the officer's use of force allegedly continued after the plaintiff was handcuffed and had ceased resisting. *Id.* at 498–500. Here, the amended complaint acknowledges that Welsh "resisted" Salazar's and others' efforts to place him in an isolation cell. But, fairly read, the complaint alleges that Vanier's use of excessive force occurred only later— after Welsh had been subdued, shackled, and transported to the isolation cell. As in *Bush*, success on Welsh's excessive-force claim would not *necessarily* imply the invalidity of his assault conviction. *Heck*, 512 U.S. at 486–87. We therefore are compelled to VACATE and REMAND the magistrate judge's dismissal of Welsh's Count 10 excessive-force claim.  We offer no

opinion as to the resolution of this claim once the *Heck* impediment is removed.

## B.

Welsh also challenges the dismissal of excessive-force claims arising from incidents occurring on March 21, 2017 (Count 6) and March 22, 2017 (Count 7). Each incident involved officers forcefully closing the food slot in Welsh's door on his hand. As the magistrate judge correctly noted in his analysis, this court has not yet announced the standard to be applied to an excessive-force claim raised by an SVP. In the absence of controlling caselaw, the magistrate judge applied an objective reasonableness standard as announced by the Supreme Court in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015).  The magistrate judge applied this standard, finding it persuasive that the Eighth Circuit applied a similar, pre-*Kingsley* objective reasonableness standard to excessive-force claims brought by involuntarily committed persons. *See Andrews v. Neer*, 253 F.3d 1052, 1061 (8th Cir. 2001). Because Welsh does not contest this standard, we assess the issue with reference to the *Kingsley* objective reasonableness standard.

In *Kingsley v. Hendrickson*, the Supreme Court set the legal standard for use of force against *pretrial detainees*, announcing that "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." 576 U.S. at 396–97. Under *Kingsley*, "objective reasonableness" turns on the "facts and circumstances of each particular case" and various factors "may bear on the reasonableness or unreasonableness of the force used":

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat

No. 19-10825

reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 397. In determining objective reasonableness, "a court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (alterations in original) (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)).

i.

With respect to the claim arising from the March 21 incident, Welsh admitted at the *Spears* hearing that an officer kicked the food slot in his door closed, causing bruising to his left hand, after he refused to remove his hands from the slot for the 15 minutes immediately preceding its forceful closure. The magistrate judge concluded that the force used was not objectively unreasonable because Welsh's refusal to move his hands after repeatedly being told to do so justified a use of force and because Welsh was actively resisting and posing a threat to institutional order. Additionally, Welsh admitted that he had removed his hands from the slot but, as the officer was attempting to close it, Welsh "intentionally stuck his foot and hand into the slot to thwart [the officer's] efforts to close it, putting himself in harm's way." Given these facts, the magistrate judge could not conclude that the officer did not try to limit the force used, especially given that Welsh actively resisted orders to remove his hands so the food slot could be closed. Finally, the magistrate judge concluded that the bruising and swelling that Welsh suffered was no more than a de minimis injury. The dismissal of this claim was not an abuse of discretion. *Brewster*, 587 F.3d at 767.

No. 19-10825

ii.

With respect to the claim arising from the March 22 incident, the magistrate judge explained that when an officer ordered Welsh to go to the food slot to get his food, Welsh threw water on the officer, poked his metal shower rod through the food slot, and put his hands in the slot. Officers then kicked the slot without warning, which caught Welsh's hand and caused pain, swelling, and bleeding. The magistrate judge noted that, although the officer may not have given warning before closing the slot, authenticated video of the incident showed that the officer tried to kick it closed after Welsh removed his hands, but Welsh put his hands back in the slot, thus "plac[ing] his hands in harm's way." The video ends with the food slot still open; officers tried to kick it closed only once.

The magistrate judge again concluded that the officers were justified in using some force after Welsh threw water through the slot and brandished a metal shower rod due to the threat posed to institutional security by these acts, especially in light of Welsh's behavior the day before this incident. Although Welsh complained of pain in his hand, X-Rays showed no injury, and Welsh did not allege long-term damage. In light of all these factors, the magistrate judge concluded that Welsh had not raised a viable excessive-force claim.

As with the claim related to the March 21 incident, the magistrate judge's reasoning is not an abuse of discretion. *Brewster*, 587 F.3d at 767.

II.

Next, Welsh argues that the magistrate judge erred by dismissing his Count 1 claim that the defendants retaliated against him for exercising his right to free speech by placing him in isolation. This claim arises from the January 2016 incident.

To establish a retaliation claim, a civilly committed person must show that the defendant intentionally committed a retaliatory adverse act due to his exercise of a constitutional right. *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018). The plaintiff must either adduce direct evidence of retaliation or "allege a chronology of events from which retaliation may plausibly be inferred." *Id.* at 245 (internal quotation marks and citation omitted).

The magistrate judge held both that Welsh's refusal to comply with officers' orders was not constitutionally protected speech and that he had not shown that the defendants used force on him due to his alleged exercise of his right to free speech. As the magistrate judge noted, both Welsh's own complaint and an authenticated video of this incident show that he refused to comply with officers' orders. The magistrate judge further concluded that Welsh had not shown that the defendants were retaliating against him because he engaged in protected speech, but instead that the adverse action of which he complained was taken because he "repeatedly disobeyed orders and threatened institutional security."

We agree. Civilly committed persons retain First Amendment rights, but, as we have previously suggested, restrictions on these rights "are permissible so long as they advance the state's interest in security, order, and rehabilitation." *Bohannan v. Doe*, 527 F. App'x 283, 294 (5th Cir. 2013) (citing *Ahlers v. Rabinowitz*, 684 F.3d 53, 58, 64 (2d Cir. 2012)). Welsh's alleged "natural civil disobedience . . . by stiff[en]ing his body and holding on to various objects to resist" being seized by officers after informing them that he would not go to isolation as he had been ordered does not amount to protected First Amendment speech. Further, Welsh's actions infringed upon the state's interests in security and order. *See id.*

In addition, Welsh has not shown that his alleged protected speech resulted in retaliation. Welsh's own complaint shows that he got into an

argument with Officer Hawthorne, was ordered into isolation, engaged in his alleged protected speech by resisting being taken to isolation, and was taken to isolation. Retaliation may not be plausibly inferred from this sequence of events. *See Brown*, 911 F.3d at 245. Instead, Welsh's account of this incident shows that his alleged protected speech occurred after he had been ordered to isolation and that the order was simply carried out.

Regardless of whether Welsh's retaliation claim is reviewed de novo or for an abuse of discretion, Welsh has not shown that the magistrate judge erred by dismissing it. *See Morris*, 702 F.3d at 189.

### III.

Welsh next challenges the magistrate judge's rejection of his access to courts claim in Count 11, in which he asserted that he was denied access to his legal materials for two weeks while he was in isolation. He argues that he explained during the *Spears* hearing that he was hampered in his efforts to file a brief to this court in *Welsh v. Texas Civil Commitment Office*, docket sheet TXND 5:17-CV-083.

In the prison context, to prevail on a claim of denial of right of access to the courts, an incarcerated person must show that his ability to pursue a nonfrivolous legal claim was hampered by the defendants' actions and that his position as a litigant was prejudiced by the alleged violation. *Lewis v. Casey*, 518 U.S. 343, 351–53 & n.3 (1996). We have previously applied *Lewis* to an access-to-courts claim raised by a civilly committed SVP. *See Day v. Seiler*, 560 F. App'x 316, 318–19 (5th Cir. 2014).

Regardless of whether this claim is reviewed de novo or for an abuse of discretion, Welsh has not shown that the magistrate judge erred by dismissing it. *See Morris*, 702 F.3d at 189. In his amended complaint, Welsh explained that this claim arose from his being placed in isolation and deprived of his legal materials for two weeks in November 2017. Welsh filed his notice

of appeal in *Welsh* in September 2017. Although the appeal was initially dismissed because Welsh failed to file a brief, it was reopened, and Welsh filed his brief in March 2018. Welsh does not explain how his separation from his legal materials during the time in question prejudiced his position in *Welsh*, 17-11092, and it is not apparent. Accordingly, Welsh has not shown that the magistrate judge erred by dismissing it. *See Morris*, 702 F.3d at 189.

## IV.

Next, Welsh challenges the magistrate judge's dismissal of several claims, starting with failure-to-protect claims. The specific parts of the amended complaint he cites in support of this argument do not explicitly argue that the defendants failed to protect him from being assaulted by other prisoners; rather, the closest his allegations come to a failure-to-protect claim is an assertion that the defendants infringed his rights by not bringing criminal charges against officials who allegedly assaulted him. Insofar as Welsh argues that the magistrate judge erred by not considering claims of failure to protect, this argument is unavailing because he raised no such claims in his amended complaint. *Cf. Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994).

Insofar as Welsh contends that he sought relief under the Constitution's Privileges and Immunities Clause and Equal Protection Clause, rather than the Due Process Clause, he has not shown that the magistrate judge erred by reading his complaint as raising due process claims. The disputed claims aver that the defendants infringed his rights by not bringing criminal charges against officials who assaulted him. Moreover, two of the listed counts explicitly invoke the Fourteenth Amendment. *See Jordan v. Fisher*, 823 F.3d 805, 810 (5th Cir. 2016) (discussing Fourteenth Amendment's due process clause). Further, the Privileges and Immunities Clause is inapt because it "prevents a state from discriminating against

citizens of another state in favor of its own citizens," and Welsh does not allege that he was treated differently than a citizen of another state. *White v. Thomas*, 660 F.2d 680, 685 (5th Cir. 1981).

Welsh does invoke the Equal Protection Clause in one of the listed claims, arguing that Detective Rodriguez and the City of Littlefield Police Department violated his equal-protection rights by not bringing charges against personnel who assaulted him. The Equal Protection Clause "keeps governmental decision makers from treating differently persons who are in all relevant respects alike." *Harris v. Hahn*, 827 F.3d 359, 365 (5th Cir. 2016) (internal quotation marks and citation omitted). That does not describe Welsh's allegations; Welsh simply asserts that he was denied his rights when criminal charges were not brought against those who assaulted him. Regardless of whether these claims are reviewed de novo or for an abuse of discretion, Welsh has not shown that the magistrate judge erred by dismissing them. *See Morris*, 702 F.3d at 189.

## V.

Welsh challenges the magistrate judge's dismissal of the false arrest claims he raised in Counts 1 and 11 of the amended complaint. The former pertains to the January 2016 incident. Because the false arrest claim would undermine his conviction for assault causing bodily injury, and because he has not shown that this conviction has been overturned, this claim is *Heck*-barred. *See Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995).

Although he asserts that he raised a false arrest claim in Counts 11-2 and 11-3 of the amended complaint, review of the complaint shows that he did not explicitly raise false arrest claims but instead grounded these claims in due process, and this is how the magistrate judge reasonably read these portions of the amended complaint. *See Hernandez v. Thaler*, 630 F.3d 420, 426–27 (5th Cir. 2011) (explaining that pro se pleadings are construed

according to their substance, not their labels). Welsh has not shown error in connection with this determination.

The magistrate judge also read Count 11 as raising a claim that defendants conspired to bring false charges against him in connection with the November 2017 incident and did not promptly bring him before a magistrate judge in connection with these charges. The magistrate judge determined that the false-charges claim was *Heck*-barred due to Welsh's evidence-falsification conviction, and that the claim concerning prompt appearance before a magistrate judge was unavailing because Welsh appeared before a magistrate judge within the required time. We agree with the latter holding. But because (as discussed) Welsh's underlying evidence-falsification conviction has been overturned, we conclude that his false-charges claim grounded in the November 2017 incident is not *Heck*-barred. We are therefore compelled to VACATE and REMAND the false-charges claim because the magistrate judge stopped after making his *Heck* determination. We offer no opinion as to the appropriate resolution of this claim.

## VI.

Welsh also challenges the magistrate judge's dismissal of his claims in Count 9 concerning an illegal search and privacy. In these claims, he challenged the need for security personnel to be present during an offsite urology medical examination and asserted that they should have looked away when a camera was inserted into his penis. In his Rule 59(e) motion, Welsh complained that the magistrate judge did not consider this claim. In his order, the magistrate judge explained that he had considered each claim raised in the amended complaint, even those not explicitly analyzed. The magistrate judge also noted Welsh's failure to allege that the dismissal contained manifest errors of law or fact.

No. 19-10825

An appellant waives an issue if he "fails to adequately brief it." *United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001). Among other requirements, an appellant's brief must contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." FED. R. APP. P. 28(a)(8)(A). This court has deemed arguments waived on appeal when an appellant "d[oes] not discuss [an] issue or cite any authority." *United States v. Trujillo*, 502 F.3d 353, 360 (5th Cir. 2007) (citation omitted). "Although *pro se* briefs are to be liberally construed, *pro se* litigants have no general immunity from the rule that issues and arguments not briefed on appeal are abandoned." *Geiger v. Jowers*, 404 F.3d 371, 373 n.6 (5th Cir. 2005). Here, Welsh does not dispute the validity of his urology examination nor that it required exposure of his genital area. Instead, without legal or factual argument elaborating a cognizable privacy violation caused by the alleged failure of security personnel to "avert their gaze," he has waived this contention on appeal.

## VII.

Welsh argues that the magistrate judge erred by dismissing his claims in Count 5 concerning a denial of therapy and a diagnosis of ephebophilia, both of which he asserts prolonged his period of civil commitment. Welsh asserts that various defendants denied him therapy in violation of his "liberty interests under the Constitution." Welsh explains that depriving him of therapy implicates his liberty interest because "release by promotion through the Tier system . . . can only be achieved through therapy." The magistrate judge reasonably interpreted Welsh's amended complaint as raising due process claims, rather than deliberate indifference and failure to train claims. Welsh has not shown error in connection with the magistrate judge's interpretation of these claims.

In the civil commitment context, "due process requires that the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed." *Seling v. Young*, 531 U.S. 250, 265 (2001). The Texas civil commitment statute authorizes the civil commitment of SVPs for the purpose of "long-term supervision and treatment." Tex. Health & Safety Code Ann. § 841.001. Thus, as this court has held, a facility's failure to provide any treatment can infringe on an SVP's substantive due process rights. *Brown*, 911 F.3d at 244.

Here, Welsh has not sufficiently alleged how the conditions of his civil commitment lacked a reasonable relation to Texas's goals of "long-term supervision and treatment" of SVPs. As the magistrate judge noted, Welsh concedes that he was offered and received therapy during his commitment. Further, Welsh makes no showing that receiving additional treatment would have expedited his release, so his assertion that any deprivation of therapy impeded his release is "too attenuated to invoke further due process protections." *Senty-Haugen v. Goodno*, 462 F.3d 876, 887 (8th Cir. 2006) (internal quotation marks and citation omitted).

Similarly, Welsh asserts that defendants violated his constitutional rights by diagnosing him with ephebophilia, which he asserts is not a condition listed in the current Diagnostic and Statistical Manual of Mental Disorders. As the magistrate judge explained, Welsh asserted in his amended complaint that the inaccurate diagnosis contributed to his continued civil commitment. Here, because Welsh does not present any facts or arguments indicating error related to his claim of inaccurate diagnosis, he has waived it on appeal. Fed. R. App. P. 28(a)(8)(A); *Trujillo*, 502 F.3d at 360; *Geiger*, 404 F.3d at 373 n.6; *Martinez*, 263 F.3d at 438.

VIII.

Next, Welsh challenges the magistrate judge's dismissal of his claims in Counts 2 and 4 concerning property rights. The magistrate judge explained these claims involved the denial of hygiene items and clean clothes while he was in isolation for one five-day period in January 2016, the denial of soap and toothpaste during another five-day period in March 2017, and the denial of hygiene items, stationary, his legal work, a bible, clothes, utensils, and his desired amount of toilet paper for a two-week period in November 2017. The magistrate judge interpreted these claims as raising arguments concerning conditions of commitment, denial of access to courts, and denial of his right to exercise religious freedom. This was a reasonable reading of the amended complaint. *See Hernandez*, 630 F.3d at 426–27.

When analyzing these claims, the magistrate judge noted Welsh's concession that, during the January 2016 five-day period when he was without hygiene items or clean clothes, he still had access to a toilet, sink, and shower. He alleged no ill effects other than body odor and emotional distress.

This court has concluded that civilly committed persons receive the process they are due if "the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed." *Brown*, 911 F.3d at 243 (quoting *Seling*, 531 U.S. at 265). The goals of Texas's SVP program are "long-term supervision and treatment of sexually violent predators." *Brown*, 911 F.3d at 243 (quoting TEX. HEALTH & SAFETY CODE ANN. § 841.001). Additionally, states have discretion in setting up civil commitment schemes. *Brown*, 911 F.3d at 243. Security measures and disciplinary rules adopted by civil commitment facilities in furtherance of the goals of supervision and treatment do not amount to a due process violation. *See id.* at 243–44. Because the deprivations Welsh alleges were temporary and he describes no ongoing adversity, and because those deprivations flow

17

from the rules and security measures implemented by the Texas Civil Commitment Center in service of the goals of supervision and treatment, he has not raised a viable conditions of commitment claim, and he has not shown that the magistrate judge erred by dismissing this claim.[4] *See id.*

The magistrate judge concluded that Welsh's claim of denial of access to courts failed because he had not shown that the failure to provide him with stationary and legal materials prejudiced him in a suit. *See Lewis*, 518 U.S. at 351–53 & n.3; *Day*, 560 F. App'x at 318–19. Welsh does not dispute this but simply insists that he had a right to property. This does not suffice to show error with respect to the magistrate judge's dismissal of this claim. *See Lewis*, 518 U.S. at 351–53.

The magistrate judge further concluded that Welsh's claim concerning a denial of religious freedom vis-à-vis denial of a bible for two weeks failed because his allegations did not show that he was forbidden from practicing his religion but only that he was denied certain property. We hold only that, because Welsh has not raised this claim in his appellate brief, he

---

[4] Welsh devotes a discrete section of his brief to separately dispute the magistrate judge's rejection of his Count 11 claims concerning the denial of eating utensils and access to certain hygiene items every other day for a two-week period in November 2017. The magistrate judge explained that, during the *Spears* hearing, Welsh admitted that he had access to a sink with running water and a toilet during the pertinent time and that he was provided a toothbrush, toothpaste, and soap within one to two days of his transfer to a secured management unit. Again, because the deprivations Welsh alleges were temporary and he describes no ongoing adversity, and because those deprivations flow from the rules and security measures implemented by the Texas Civil Commitment Center in service of the goals of supervision and treatment, he has not raised a viable constitutional claim, and he has not shown that the magistrate judge erred by dismissing this claim. *See Brown*, 911 F.3d at 243.

has waived it on appeal. FED. R. APP. P. 28(a)(8)(A); *Trujillo*, 502 F.3d at 360; *Geiger*, 404 F.3d at 373 n.6; *Martinez*, 263 F.3d at 438.

IX.

Welsh also challenges the magistrate judge's rejection of his due process claims, raised in Counts 2, 4, 10, and 11 of his amended complaint, in which he alleges that "punitive confinement conditions" violated his due process rights.

Several of Welsh's due process claims pertain to his placement in isolation due to pending criminal charges arising from the January 2016 incident (Count 2) and his placement in isolation after he allegedly assaulted another resident in January 2017, was arrested and charged with assault, and committed several other rule violations (Counts 4 and 11).

When considering the claims in Counts 2, 4, and 11, the magistrate judge first noted that this court had not set forth the standard to be applied to SVPs raising procedural due process claims.  The magistrate judge noted, however, that other courts apply a standard given in *Sandin v. Conner*—a prisoner's due process rights may be infringed by a deprivation that is "atypical and significant . . . in relation to the ordinary incidents" of prison life—to due process claims raised by civilly committed SVPs. 515 U.S. 472, 484 (1995); *see also Thielman v. Leean*, 282 F.3d 478, 480, 482–84 (7th Cir. 2002); *Deavers v. Santiago*, 243 F. App'x 719, 721 (3d Cir. 2007). Because Welsh neither contests the legal standard nor identifies caselaw that would supply an appropriate alternative framework, we consider these claims with reference to the law used by the magistrate judge for the purposes of this appeal only.

Regarding Welsh's claim in Count 2, the magistrate judge concluded that Welsh had not shown a procedural due process violation because he alleged only that he was denied certain property such as electronics, snacks,

and clothes; the magistrate judge determined that being deprived of these items did not amount to "atypical and significant" hardships and thus did not trigger due process protections. Regarding Welsh's claims in Counts 4 and 11, the magistrate judge similarly concluded that they failed because the restrictions Welsh complained of were de minimis—Welsh asserted that he was placed on "'lockdown'" for 13 to 15 hours per day during which he was denied electronics, was denied the right to purchase items from the commissary, and was given limited recreation time—and were imposed to support the goals of supervision and treatment. *See Brown*, 911 F.3d at 243. The dismissal of these claims was not an abuse of discretion.

Welsh also asserted that his due process rights were infringed when he was placed in restraints and moved following the November 2017 incident (Count 10). Because Welsh has not discussed any facts or cited any authority regarding this claim in his appellate brief, he has waived it on appeal. FED. R. APP. P. 28(a)(8)(A); *Trujillo*, 502 F.3d at 360; *Geiger*, 404 F.3d at 373 n.6; *Martinez*, 263 F.3d at 438.

X.

Welsh also challenges the magistrate judge's dismissal of his Count 3 claim concerning delayed mail, in which he argued that he was unable to tell counsel what issues he wanted raised in his appeal from his SVP trial because his legal mail was delayed.

Again, although this court has not yet articulated the standard that applies to claims of interference with legal mail in the civil-commitment context, *see Allen v. Seiler*, 2013 WL 357614, at *6 (N.D. Tex. Jan. 30, 2013), other circuits apply the standard used in prisoner civil rights cases. *E.g., Ahlers v. Rabinowitz*, 684 F.3d 53, 64 (2d Cir. 2012); *see also Allen v. Seiler*, 535 F. App'x 423 (5th Cir. 2013) (affirming a district court's analysis that assumed the standard for reviewing a civilly committed person's legal mail

claim was the same as that for reviewing a prisoner's legal mail claim). Moreover, under the standard this court applies in the prisoner mail context, one may not recover absent a showing that the defendant intentionally delayed his mail. *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1988). Assuming the same or similar standard would apply to claims of interference with legal mail in the civil-commitment context, we hold that the magistrate judge properly dismissed this claim, as Welsh has asserted only negligence.

## XI.

Welsh challenges the magistrate judge's dismissal of the Count 1 claims he raised under 42 U.S.C. § 1985 and § 1986. The magistrate judge interpreted Welsh's § 1985 claim as arising under § 1985(3), which prohibits conspiracies to deprive a person of equal protection of the laws, provided the conspirators were motivated by an immutable characteristic of the victim. Welsh averred that his SVP status was an immutable characteristic that made § 1985(3) applicable. The magistrate judge concluded that SVPs are not a protected group for § 1985(3) purposes because this statute "generally addresses racial discrimination and has not been broadly construed to encompass other identifiable groups" and dismissed the claim.

The magistrate judge also found that Welsh's § 1986 failed. § 1986 provides for recovery against anyone "who, having knowledge that [a § 1985 conspiracy is] about to be committed," does nothing about it. Because Welsh had not pleaded facts establishing a § 1985 conspiracy, the magistrate judge concluded that Welsh could not establish a claim under § 1986.

Welsh addresses neither the magistrate judge's reasoning nor the cases cited in support thereof but simply asserts that he was entitled to protection under these statutes. This does not show error in the dismissal of this claim. *See Brinkmann*, 813 F.2d at 748.

## XII.

Finally, Welsh argues that the magistrate judge should have informed him of the shortcomings in his complaint and permitted him to amend it before it was dismissed. Before dismissing a pro se complaint, a judge ordinarily will give the litigant the opportunity to amend his complaint to remedy the deficiencies or otherwise allow him to develop his factual claims. *Eason v. Thaler*, 14 F.3d 8, 9–10 (5th Cir. 1994); *see also Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998). The primary means that have evolved for remedying inadequacies in a prisoner's pleadings are a *Spears* hearing or a questionnaire that permits the prisoner to focus his claims. *Eason*, 14 F.3d at 9. The record shows that the magistrate judge both permitted Welsh to amend his complaint and held a *Spears* hearing, at the end of which he invited Welsh to speak about anything that had not been covered and that he wanted to discuss. The record thus shows that the magistrate judge gave Welsh ample opportunity to plead his best case, hence this claim is unavailing.

\* \* \*

We AFFIRM in large part, VACATE in part, and REMAND for further proceedings consistent with this opinion.